## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND,
## NORTHERN DIVISION

**EDWARD SKINNER, III**

     **Plaintiff,**      *

     **vs.**        *    **Case No. 1:19-cv-03559-ELH**

  **BART GARRY**      *

     **Defendant**     *

   **************************************************************

### DEFENDANT BART GARRY'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY CASE

### I. Introduction

Plaintiff makes three arguments in his Opposition to Motion to Compel Arbitration.   First, he claims that BSD Collections, Inc. ("BSD") has not proven that it is the owner of the debt of Plaintiff.   As will be shown this is a new argument brought up for the first time in the opposition. Plaintiff never raised this argument in the original suit by BSD,   Plaintiff also admitted that BSD was the owner of the debt in his own Complaint. Even so, Defendant presents further affidavits and cases proving that the evidence presented is both admissible and satisfactory to prove a valid assignment.

The second argument that Plaintiff makes is that the contract does not specifically include assignees and therefore it is limited to Crest and its employees, shareholders, etc. But as will be shown,   Plaintiff ignores the law of assignees that allows an assignee to step into the shoes of the original assignor.   While the contract broadly applies to Crest and nearly every conceivable

connection to Crest, once the debt was assigned, it applies to BSD and nearly every conceivable connection to BSD.   This includes the owner, President and attorney of BSD, Bart Garry.

The third argument of Plaintiff is that by bringing a collection suit against Plaintiff in small claims court that Defendant has waived the right to arbitration in a later suit.   As will be shown, this is a complete misstatement of 4th Circuit and Maryland District Court law.   In fact, for decades these courts have in numerous cases required "actual prejudice" to Plaintiff   which typically requires substantial time, expenses, pretrial discovery and substantive motions (such as Motions for Summary Judgment).   Just bringing a collection suit in small claims court has not been even considered close to actual prejudice.

## II. Facts

Craig M. Geisler is the President of Cherrywood Enterprise, LLC. ("CE") As the President of CE, he is the custodian of records of all purchases and sales of charged off debt for the company. (Geisler Aff. 1)

On March 4, 2019 CE was assigned numerous debts from Debt Management Partners, LLC ("DMP"), who had itself purchased the debt from the original creditor Crest Financial Services, LLC ("Crest").   One of the debts purchased at that time was that of Plaintiff, Edward Skinner, 3rd ("Plaintiff"). With that purchase CE was provided five documents by DMP. Although Geisler himself had not made any of these documents, these five documents were incorporated into CE's own business records and he reviewed these records and relied upon them in conducting his business.   CE itself also prepared a sixth document which was an assignment from CE of 307 debts to BSD Collections, Inc. ("BSD").   Included in these 307 debts was the debt of Plaintiff. (Geisler Aff. 2)

–2–

Among the five documents provided to CE from DMP,   the first two records involved the transfers of all the debts purchased including that of Plaintiff.   The business records are:   1) an assignment of all the debts from Crest to DMP, (Exh. 1);   and 2) an assignment of all the debts from DMP to CE (Exh. 2).   3)   A data file listing the name and Social Security Number,   last payment date, amount owed, etc. of all the debts purchased (Exh. 4); 4) a copy of the signed contract between Crest and Plaintiff (Exh. 5) ;   and 5) a listing of all payments made by Plaintiff on the debt. (Exh. 6)   The other record was prepared by CE and is an assignment from CE of 307 debts to BSD.   Included in these 307 debts was the debt of Plaintiff. (Exh. 3)    (Geisler Aff. 3)

On March, 5, 2019 CE assigned 307 debts to BSD.   CE provided to BSD all five of the business records provided to CE by DMP (Exh. 1, 2, 4, 5 and 6), as well as the assignment of all these debts from CE to BSD (Exh. 3) (Geisler Aff. 4)

Among those debts assigned to BSD was for a debtor named Edward Skinner, III, whose last 4 Social Security Number was 5473.   The listing of the debt is reflected in the attached (Exh. 4) labeled Redacted Exhibit A.   This exhibit is merely a redacted version of the original data file that had originally been given to us by DMP which we assigned to BSD (leaving out the list of all the other debts assigned to BSD aside from Mr. Skinner, and renamed Redacted Exhibit A). (Geisler Aff. 5)

Bart Garry ("Garry")   is the President and 100% stock owner of a Maryland stock corporation called BSD Collections, Inc.   (Garry Aff. 1)   He also runs a law firm as a sole proprietorship that does business using the name "Law Office of Bart Garry." (Garry Aff. 2)   As the President of BSD Collections, Inc. Garry is the custodian of records of all purchases of charged off debt for the company. (Garry Aff. 3)

On March 5, 2019, BSD Collections, Inc. purchased numerous charged off debts from

Cherrywood Enterprises, LLC.   One of the debts purchased at that time was that of Plaintiff, Edward Skinner, 3rd ("Plaintiff").With that purchase BSD was provided six documents by Cherrywood Enterprises, LLC.   These six documents have been incorporated into BSD Collections, Inc's own business records and are relied upon by us in conducting our business. (Garry Aff. 4)

The first three records involved the transfers of all the debts purchased including that of Plaintiff.   The business records are:   1) an assignment of all the debts from Crest Financial Services, LLC to Debt Management Partners, LLC, (Exh. 1);   2) an assignment of all the debts from Debt Management Partners, LLC to Cherrywood Enterprises, LLC, (Exh. 2);   3) an assignment of all of the debts from Cherrywood Enterprises, LLC to BSD Collections, Inc. (Exh. 3);   4) A data file listing the name and Social Security Number,   Last Payment date, amount owed, etc. of all the debts purchased (Exh. 4-This exhibit has been redacted by Garry to remove the other debtors information, and personal information of Plaintiff);   5) a copy of the signed contract between Crest Financial Services, LLC and Plaintiff (Exh. 5) ;   6) a listing of all payments made by Plaintiff on the debt. (Exh. 6) (Garry Aff. 5)

In relation to the assignments, it is the custom and practice in the debt buying industry to assign large groups of debts at one time, rather than assigning individually each debt.   The debts being assigned are referenced as an exhibit in the assignment and listed in detail in a data file attached. (Garry Aff. 6)

In relation to Plaintiff, his name "Edward Skinner 3rd"   was listed in the data file, as well his social security number (last four 5473) , the   remaining balance of $3300.37, as well as the last payment date of 11/19/2015.   This information was incorporated into BSD's business records and was relied upon as the basis for the underlying lawsuit. (Garry Aff. 7)

In the underlying debt collection suit against Plaintiff the only defense raised by Defendant's attorney was the statute of limitations,   Plaintiff never claimed that BSD did not have an improper chain of title. (Garry Aff. 8)

### III. Argument

**1. BSD Collections was the legal owner of the debt of Plaintiff and can prove an unbroken chain of title**

      **a.   Plaintiff is only challenging Plaintiff's ownership for the first time in his opposition**

Plaintiff never challenged the chain of title in the original debt collection action.   After BSD brought suit against Plaintiff the only defense raised by Plaintiff's counsel was statute of limitations,   Plaintiff   and his counsel never claimed that there was any problem with the chain of title, since no such problem existed, and this was only raised for the first time in Plaintiff's Opposition to the Motion to Compel Arbitration.[1]

Furthermore Plaintiff's Complaint in the present action admits that BSD was the owner of the Plaintiff's debt.   Plaintiff's Complaint Paragraph 11 states "According to Defendant's Court filings in the District Court of Maryland, Case No. 01010018450-2019, Crest then sold Mr.

---

[1]      It is highly questionable whether this Court can examine this first issue at all, since by questioning BSD's ownership of the debt, Plaintiff is challenging enforceability the entire lease.   Section 15 of the lease states "any dispute or argument that concerns the validity or enforceability of this Lease as a whole is for the arbitrator, not the court, to decide."   Both the 4th Circuit and US Supreme Court have held this type of provision is enforceable.   See *Novic v. Midland Funding LLC* 757 Fed Appx 263 *(2019)* \and *Rent-A-Center West Inc. v. Jackson* 561 US 63 (2010). But based on *Rent-A-Center* the court can separate out the arbitration provisions and rule on their enforceability while leaving the validity of the lease as whole to the arbitrator.

Skinner's alleged debt, along with thousands of others, to debt buyers."   Plaintiff's Complaint Paragraph 12 states, "According to Defendant's Court filings in the District Court of Maryland, Case No. 01010018450-2019 BSD Collections, Inc., eventually purchased Mr. Skinner's debt, along with hundreds of others."   Plaintiff never once in his Complaint questions or challenges these facts, but instead assumes them to be true for the purpose of the Complaint.   Only now, that he is trying to oppose the Motion to Compel Arbitration, does he now allege for the first time that there is no proof of an unbroken chain of title.

**b.   The evidence provided by Defendant is legally sufficient to prove the assignments and the underlying debt.**

Even though Plaintiff never raised this issue before, in order to satisfy Plaintiff's objection, Defendant has provided two more affidavits explaining the assignments and that the underlying debt legally belongs to BSD.   Plaintiff objects to the assignments and the data showing that BSD is the legal owner of the debt. Plaintiff's contention is that only the parties who made the underlying data file or who signed the assignment can testify to their validity.   Defendant has presented affidavits from Garry and Craig Geisler, the President of Cherrywood Enterprises, LLC. proving that BSD is the actual owner of Plaintiff's debt.   The only issue in dispute is whether Garry and Geisler can provide this testimony, or that it must be sworn to from those who actually prepared the data file and assignments.   As will be shown, the law clearly permits Garry and Geisler to provide this evidence and it is both admissible and satisfactory, without the need from affidavits from the parties who actually created the documents.

In the case of *Bey v. Midland Credit Mgmt., Inc.*, 2016 WL 1226648 (D. Md.) there were two underlying debts for a Citibank Account for Mr. Bey and a cellular phone account from

T-Mobile for Mr. Best, which were both assigned to Midland Funding, who in turn assigned both debts to Midland Credit. Midland Credit sought to enforce arbitration agreements from the two original creditors.    Midland Credit provided an affidavit from their operations manager who explained the underlying agreements, the assignments and the data file provided incorporated the debtors names and information. Although he did not have personal involvement at all in the records from T-Mobile and Citibank he relied upon the records prepared by others and incorporated them into Midland Credit's own business records.

Plaintiff argued that Midland Credit had failed to prove the assignments and that the data file listing Plaintiffs as debtors could not be proven by Midland Funding's Operations Manager. The court disagreed and allowed the evidence.   It stated, "Although in attesting to the relevant information respecting Plaintiffs' debts Mr. Hannan relied on some business records that were created by businesses other than Midland Credit or Midland Funding, he explained such records have been incorporated into Midland's business records 'and are relied upon by them in conducting their business'.   Such evidence may properly be considered by the Court under the business records exception to the rule against hearsay. See   Fed. Rule of Evid. 803(6) *Brawner v. Allstate Indem. Co*., 591 F.3d 984, 987 (8th Cir. 2010) (A record created by a third party and integrated into another entity's records is admissible as the record of the custodian entity, so long as the custodian entity relied upon the accuracy of the record and the other requirements of Rule 803(6) are satisfied.) *United States v. Adefehinti*, 510 F.3d 319, 326 (D.C. Cir. 2007) ("A record of which a firm takes custody is thereby 'made' by the firm within the meaning of the rule (and thus is admissible if all the other requirements to the business records exception are satisfied.)   *See also United States v. Wein,*521 Fed. App'x 138, 140 (4th Cir. 2013) (noting that custodian of records need not be able to confirm the accuracy of the records in order to be a qualified witness to

–7–

authenticate business records.")   The *Bey* court then concluded that the Defendants had submitted sufficient evidence to establish that Midland is indeed the assignee of Plaintiffs respective debts and allowed the enforcement of the arbitration agreements.

In the present case Defendant has provided the Affidavits of Garry and of Geisner.   These affidavits support and explain the assignments and how they accurately reflect the chain of title from Crest to Debt Management Partners, LLC ("DMP"), from DMP to Cherrywood Enterprises, LLC, and from Cherrywood Enterprises, LLC to BSD.   All of the assignments were incorporated into BSD's and Cherrywood's business records.   The data file originally prepared by Crest lists Plaintiff as one of the debtors whose debt was assigned through the chain of title to BSD.   This data file was part of the business records of both Cherrywood Enterprises and BSD and was incorporated into both of their business records proving BSD was the owner of Plaintiff's debt. Both the Lease Agreement between Crest and Plaintiff (Exh. 5) , and the listing of all payments made by Plaintiff on the debt (Exh. 6) were both incorporated into BSD's business records and further prove BSD's ownership of the debt.

Therefore Defendant's evidence is sufficient to prove BSD's ownership of Plaintiff's debt and enforcement of the Arbitration Agreement.

**2.   Both as matter of contract interpretation and as matter of law, the arbitration provision covers Bart Garry**

**a.   In interpreting the Lease Agreement the use of the word "Crest" should be**

**replaced with "BSD Collections, Inc."**

The extent of Plaintiff's argument is that because the lease agreement never mentions covering assignees, and because only <u>Crest's</u> employees, officers, etc. are covered, therefore Bart Garry, as President, Owner and Attorney for BSD is not covered by the lease.   This is a misstatement of the law of assignments and therefore results in a misinterpretation of the contract.

In *Graham v. Santander USA Inc.*   2018 WL 2462881 (D. Md.) Darcars sold a car to Graham under a sales agreement and then assigned the sales agreement to Santander.   Graham then sued Santander under various consumer protection laws.   Santander then made a motion to compel arbitration.

Graham opposed Santander's Motion to Compel Arbitration because neither Santander, specifically, nor an assignee generally, was named in the contract and furthermore that the arbitration agreement was not enforceable by an assignee.   The court completely rejected this argument and said, "an assignment allows a third party to 'stand in the shoes' of an original party to the contract…Thus in effect an assignment replaces the name of the assignor in the contract with that of the assignee, removing any need for a contract to anticipate an assignee, by, for example, specifically naming him as a future party.   Here the assignment had just that effect, granting Santander though unnamed in the contract, every right Darcars previously enjoyed under the contract."

Similarly in *Dowdy v. Santander Consumer USA,* 2019 WL 5455554 (D. Md)   where a plaintiff made the same objections as in Graham to the assignment claiming that Santander was not mentioned in the contract.   The court adopted the reasoning in Graham and cited the same identical language,   "an assignment allows a third party to 'stand in the shoes' of an original party to the contract…Thus in effect an assignment replaces the name of the assignor in the contract with

that of the assignee, removing any need for a contract to anticipate an assignee, by, for example, specifically naming him as a future party.   Here the assignment had just that effect, granting Santander though unnamed in the contract, every right Darcars previously enjoyed under the contract."

In the present case, the same principle applies, all references to Crest need to be changed to BSD, and the references to employees, stockholders, etc. should refer to BSD's employees stockholders, etc.

**b. The right to compel arbitration under the Lease Agreement also covers Bart Garry**

The relevant portion of the lease agreement states the following: 15(b)(i)-

References to "we", "us" and "our" include our "Related Parties"--all our parent companies, subsidiaries and affiliates, and our and their employees, directors, officers, shareholders, managers and members. Our "Related Parties" also include third parties that you bring a claim against at the same time you bring a claim against us or any other Related Party…(ii) Claim means any claim, dispute, or controversy between you and us (including any Related Party) that arises from or relates in any way to this lease or the Property…[or] our collection of any amounts you owe…"Claim" is to be given the broadest reasonable meaning and includes claims of kind and nature…."

There are several definitions that cover either Bart Garry, an individual and/or Bart Garry d/b/a Law Office of Bart Garry.   The first provision is the fact that Related Parties covers "affiliates " of BSD.    According to Black's Law Dictionary "affiliates"   means "companies that have shared resources, interests or business dealings."   In the case of BSD and Law Office of Bart Garry they both have a common 100% owner and Law Office of Bart Garry represents BSD in all its legal actions involving collections, so they clearly have commons business dealings and interests.   This is the very definition of an affiliate.

"Related Parties" also includes officers and shareholders of BSD.   Bart Garry is the

President of BSD and therefore should be covered by the "officer" provision of the Contract.   Bart Garry is also the 100% shareholder and should be covered by the "shareholder" provision of the contract.   While Plaintiff is trying to argue that these provisions do not cover Defendant since Plaintiff is only suing Defendant in his capacity as an attorney, the provisions of the Lease Agreement, put no such limitations on the right to compel arbitration.   Nowhere does it say anywhere in the contract that Related Parties includes officers and shareholders, but only while they are operating specifically in their capacity of officers and shareholders.   Instead it includes officers and shareholders regardless of what capacity they operating under, including if they are also operating as an outside attorney.   Since Bart Garry, is both an officer and shareholder of BSD he is covered under the officer and shareholder provision, whether or not he is operating in that specific capacity under the Lease Agreement.

Related Parties also includes "third parties that you bring a claim against at the same time you bring a claim against us or any Related party."   Although technically Plaintiff brought a claim against only one party "Bart Garry, d/b/a Law Office of Bart Garry"   In reality he is bringing a claim against both the Bart Garry d/b/a Law Office of Bart Garry and Bart Garry, who is the President and Shareholder of BSD, since they are the same individual person.   If Plaintiff had chosen to sue Bart Garry as attorney, Bart Garry as shareholder, and Bart Garry as President of BSD, it would not involve three separate suits, but rather one suit against one individual.   The fact,   Plaintiff tries to separate out only the law office has no basis in reality.

Therefore based on the clear language of the Lease Agreement, Bart Garry, d/b/a Law Office of Bart Garry is able to enforce the arbitration agreement.

**c.  Even if the Lease Agreement does not explicitly cover Bart Garry d/b/a Law**

**Office of Bart Garry, it would still be covered as a matter of law, since agents of parties can bring claims against signatories, even when they are not mentioned in the contract**

Even though it is clear that the arbitration agreement covers Bart Garry, as mentioned above, even if this was not case, he is still covered by the agreement as a matter of law because of the legal principle that agents and employees not mentioned in an arbitration agreement are still covered by that agreement.

This issue was discussed in the case of *Dennie v. Mediummune, Inc.*, 2017 WL 2930462 (D. Md.). In *Dennie,* the Plaintiff brought numerous employment related claims pertaining to sexual harassment against Medimmune, and an intentional infliction of emotion distress claim against one of the members of management Anthony Williams.   There was an arbitration agreement that covered Medimmune, but said nothing about agents or employees of the company. Williams moved for a motion to compel arbitration claiming that he was an agent of Medimmune and should be covered by the arbitration agreement even though not mentioned.   The court said, "Where a principal is bound under the terms of a valid arbitration clause, its agents, employees and representatives are also covered under the terms of such agreements. (citing *Pritzer v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 7 F.3d 1110, 1121 (3rd Cir. 1993).   The court also noted "that a number of our sister circuits have addressed this issue, and have all held that an agent is entitled to her principal's arbitration clause when the claims against her are based on her conduct as an agent."

In the present case, Bart Garry, was acting at all times as an agent/attorney2  representing

---

2  See Restatement (Second) of Agency § 14 (1958) (characterizing lawyers as "recognized agents"); Restatement (Third) of the Law Governing Lawyers ch.2, Introductory Note (Proposed Final Draft No. 1, 1996) (stating that the lawyer-client relationship is "from one point of view, derived from the law of agency," although the nature of the relationship warrants safeguards beyond those generally provided to principals); Stephen Gillers, Regulation of

the interests of BSD in litigation through the filing of lawsuits and representation of BSD in the courts.   The allegations that he filed lawsuits beyond the statute of limitations goes solely and exclusively towards his representation and agency of BSD in the courts.   Since Garry was acting in an agency capacity, even if he was not explicitly covered by the Lease Agreement, he can still move to compel arbitration based on the agency principle of *Dennie*.

### 3.   Defendant did not waive arbitration since there was never any actual prejudice

Plaintiff misrepresents the current state of Fourth Circuit law by stating that seeking redress by trying to argue that merely filing a debt collection case with nothing more constitutes waiver.3   In fact, Plaintiff must prove actual prejudice to make a claim of waiver.   The Fourth Circuit first addressed the requirements for waiving arbitration in the case of *Maxum Foundations, Inc. v. Salus Corp.* 779 F.2d 974 (4th Cir. 1985) the court stated "A litigant may waive its right to invoke the Federal Arbitration Act by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay" [but] "the party objecting to arbitration must be actually prejudiced." *Maxum* at 981, 982.   In *Maxum*, the party moving for arbitration had attended some depositions, noticed three depositions, propounded interrogatories and document requests.   Nevertheless the court found no prejudice to the party opposing arbitration

In *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 817 F.2d 250 (4th Cir. 1987) the

---

Lawyers 60 (5th ed. 1998) ("Lawyers are their clients' agents. The law of agency therefore applies to the client-lawyer relationship.").

3  While Defendant contends that Utah law applies, for purposes of this Reply, Defendant will show that also under the 4th Circuit and Maryland District law, actual prejudice must be shown.

court stated "A litigant may waive its right to invoke the Federal Arbitration Act by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Maxum,* 779 F.2d at 981. The dispositive question is whether the party objecting to arbitration has suffered actual prejudice. *Id.* at 982. Neither delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration. *See Carolina Throwing Co. v. S & E Novelty Corp.,* 442 F.2d 329 (4th Cir.1971) (delay of three to four months and filing of counterclaim not prejudicial). However, delay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice. "[W]here a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced." *Price,* 791 F.2d at 1161.   In *Fraser* the court did find prejudice after the party moving for arbitration had filed a motion for summary judgment, three motions to dismiss, and that two trial dates had already passed.   Furthermore there was a 4.5 year delay from the filing of the lawsuit to the filing the motion for arbitration.

In *Microstrategy Inc. v. Lauricia,* 268 F.3d 244 (4th Cir. 2001) the court stated "Under the Federal Arbitration Act, a party may demand a stay of federal judicial proceedings pending exercise of a contractual right to have the subject matter of the federal action decided by arbitration, unless the party seeking arbitration is `in default' of that right." *Maxum Founds., Inc. v. Salus Corp.,* 779 F.2d 974, 981 (4th Cir.1985); *see* 9 U.S.C.A. § 3 (West 1999). "Although this principle of `default' is akin to waiver, the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred."

−14−

*Maxum,* 779 F.2d at 981; *see also American Recovery Corp. v. Computerized Thermal Imaging, Inc.,* 96 F.3d 88, 95 (4th Cir.1996) ("Because of the strong federal policy favoring arbitration, ... we will not lightly infer the circumstances constituting waiver."). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

A party may waive its right to insist on arbitration if the party "so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Maxum,* 779 F.2d at 981. But even in cases where the party seeking arbitration has invoked the "litigation machinery" to some degree, "[t]he dispositive question is whether the party objecting to arbitration has suffered *actual prejudice.*" *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 817 F.2d 250, 252 (4th Cir. 1987) (emphasis added). "Neither delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration. However, delay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice." *Id.* (citation omitted).

In *Microstrategy,* there were "many motions, responses, and other procedural maneuvers (more than 50, according to Lauricia), including a later-dismissed appeal by MicroStrategy of the district court's dismissal of *MicroStrategy I.* And there is no doubt that the litigation involved the expenditure of substantial sums of money by all involved." But even so the court ruled "Although Lauricia makes a strong argument that MicroStrategy undertook its "remarkably aggressive" course of litigation for the sole purpose of wearing her out, both emotionally and financially, we

hold only that Lauricia failed to carry her "heavy burden" of establishing that she suffered legally significant prejudice from MicroStrategy's litigation activities." *Microstrategy* at 255

In *Patten Grading & Paving v. Skanska USA Building,* 380 F.3d 200, 204   (4th Cir. 2004) the court stated, "To further facilitate arbitration, the FAA authorizes a party to an arbitration agreement to demand a stay of proceedings in order to pursue arbitration, "provid[ed] the applicant for the stay is not in default" of that right. 9 U.S.C. § 3. Such default or waiver arises when the party seeking arbitration "so substantially utiliz[ed] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Maxum Founds., Inc. v. Salus Corp.,* 779 F.2d 974, 981 (4th Cir.1985). However, in concert with other circuits, we have consistently held that because of the strong federal policy favoring arbitration "we will not lightly infer the circumstances constituting waiver." *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.,* 96 F.3d 88, 95 (4th Cir.1996). The party opposing arbitration on the basis of waiver thus bears a "heavy burden." *Micro-Strategy,* 268 F.3d at 251.

In *Patten,* the party opposing arbitration made five separate claims trying to argue prejudice, including a four month delay, engaging in discovery and motions,   filing the motion to compel arbitration just before the trial,   participation in pre-trial mediation, and incurring $5862.52 in pre-litigation costs.   The court concluded that whether taken separately or taking all the factors together " "Given the comparatively restrained pre-trial activity engaged in by Skanska, the strong policy favoring arbitration, and the heavy burden borne by the non-movant, we cannot conclude that Patten has made the requisite showing of prejudice." *Patten* at 209

In *Rota-McLarty v. Santander Consumer USA, Inc*., 700 F. 3d 690 (4th Cir. 2012) after

Santander sought to collect on an unpaid automobile, the Plaintiff brought a class action under Maryland consumer protection laws. Both parties conducted depositions and a discovery schedule was sought, then Santander moved to compel arbitration six months after the suit was filed.

The *Rota-McLarty* court stated "As a threshold matter, we note the district court erred by applying the wrong law. Under the FAA, a party may lose its right to compel arbitration if it "is in default in proceeding with such arbitration." 9 U.S.C. § 3. This principle of "default" is akin to waiver, but not identical. Unlike some waiver doctrines, "the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred," *Maxum,* 779 F.2d at 981, and the party opposing arbitration bears a heavy burden to prove default, *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.,* 96 F.3d 88, 95 (4th Cir.1996).

Generally, a litigant defaults on its right to invoke the FAA where it "`so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay.'" *Forrester,* 553 F.3d at 343 (citation omitted). "Where a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced." *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 817 F.2d 250, 252 (4th Cir.1987) (internal quotation marks omitted). The dispositive determination is whether the opposing party has suffered actual prejudice. *MicroStrategy, Inc. v. Lauricia,* 268 F.3d at 249 (citing *Fraser,* 817 F.2d at 252); *see also Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.,* 380 F.3d 200, 205 (4th Cir.2004). Two factors

specifically inform our inquiry into actual prejudice: (1) the amount of the delay; and (2) the extent of the moving party's trial-oriented activity. *MicroStrategy,* 268 F.3d at 249. Notably, the moving party's reason for delay is not relevant to the default inquiry under our precedent. *Rota-McLarty* at 702.

The court concluded that a 6 and 1/2 month delay was not prejudical.   The court noted also "Santander utilized the litigation machinery in a few — mostly minimal — ways: it removed the complaint to federal court, filed an answer, proposed a bifurcated discovery plan, took Rota-McLarty's deposition on both phase one and phase two issues, and waited for clarity in the law in order to avoid class arbitration. No dispositive motions were filed. The court also found Rota-McLarty has failed to establish the prejudice necessary to justify finding Santander defaulted on its right to enforce the arbitration agreement under the FAA.

In *Barbagallo v. Niagara Credit Solutions, Inc.* 2012 WL 6478956 (D. Md. 2012)4   the Maryland District Court found actual prejudice.   It cited two factors in its prejudice analysis "Under the FAA, two factors are considered in analyzing actual prejudice: "(1) the amount of the delay; and (2) the extent of the moving party's trial-oriented activity."   In that case Niagara brought suit in October 2009, but only made a motion to compel arbitration 32 months later. Also before filing its motion to compel arbitration, NMAC "utilized the litigation machinery" in a number of important ways, in two lawsuits: (1) it filed suit against Plaintiff in 2009 regarding the debt owed on the sale contract; (2) it sought discovery and disputed Plaintiff's requests in that suit; (3) after voluntarily dismissing its 2009 case, it filed a motion to dismiss in state court on Plaintiff's

---

4  Plaintiff cites this case in his brief, but merely pulls out one favorable line, while ignoring the court's overall analysis of prejudice

current suit, which it argued at a hearing and lost; and (4) it again engaged in and disputed discovery with Plaintiff. The court found that "Taken as a whole, these activities support a finding of actual prejudice to Plaintiff and, therefore, a finding that NMAC is in default on its rights under the FAA."

Plaintiff also cited a case called,  *Novic v. Midland Funding, LLC,* 271 F. Supp. 378 (D. Md. 2017), where an original creditor who had assigned its debt to others sought to enforce arbitration.   There are two major problems with this citation.   First the case was overturned on appeal, and is of highly questionable legality, and second there is no real analysis of actual prejudice under Federal law.   The Court although acknowledging that *Cain v. Midland Funding, LLC,* 452 Md. 1415   was not binding seemed to deny all the major decisions from *Maxum* through *Barbagallo*, and not really require any prejudice at all.

The questionable law of *Novic,* which appeared inconsistent for 4th Circuit precedent, was clarified in the case of *Castellanos v. Marine Finance, LLC*.   WL 488725, (D. Md 2018).   In that case Marine Finance brought a collection suit against Castellanos.   Castanellos then sued Marine Finance under numerous consumer protection statutes.   Marine One then promptly removed the case to Federal court and moved for arbitration.   Castanellos claimed waiver because of the collection action.   The court in citing *Novic6*  and *Rota-McLarty* noted that "Federal law requires a showing of actual prejudice, as evidenced by the amount of delay and the extent of the moving party's trial orientated activity."

5 *Cain* eliminated the need to prove prejudice under Maryland state arbitration law, but had no effect on Federal law.
6 *Novic* had not yet been overturned on appeal when cited in *Castellanos.*

The court in *Castanellos* noted that by promptly moving to court to compel arbitration there was no undue delay, and that bringing a collection claim in small claims court did not constitute "trial orientated activity" that was prejudicial.

It is also important to note that numerous federal courts throughout the country have also found that the simple filing of a collection action does not constitute waiver of a motion to compel arbitration in a later action.   (See *Cage v. CACH, LLC*, No. C13-01741RSL, 2014 WL 2170431 (W.D. Wash. May 22, 2014); *James v. Portfolio Recovery Assocs., LLC, No. 14-cv-03889-RMW, 2015 WL 720195 (N.D. Cal. Feb. 20, 2015); Schwartz v. CACH, LLC, No. 13-12644-FDS, 2014 WL 298107 (D. Mass. Jan. 27, 2014); Funderburke*, 2013 WL 394198. *Spencer v. Midland Funding LLC*, No. 3:16-cv-00093-BR, 2016 WL 8677216 (D. Or. Oct. 21, 2016); *Davis v. CACH, LLC, No. 14-cv-03892-BLF, 2015 WL 913392 (N.D. Cal. Mar. 2, 2015) ; Garcia v. Weltman, Weinberg & Reis Co. of Mich., No. 2:13-cv-14362, 2014 WL 1746522 (E.D. Mich. Apr. 30, 3014); Hodson v. Javitch, Block & Rathbone, LLP, 531 F. Supp. 2d 827, 831 (N.D. Ohio 2008).*

In the present there was no undue delay in making a motion to compel arbitration.   The debt collection lawsuit was filed on August 12, 2019.   The Motion to Compel Arbitration was filed on January 7, 2020, less than five months after the original action was filed and only a few weeks after service was made in the present action.   In *Rota-Mclarty*, a 6.5 month delay was not seen as prejudical.   In *Patten* a four month delay was not prejudical. In Fraser the court did find a 4.5 <u>year</u> delay to be prejudicial, while in *Barbagallo* the court found a 32 month delay to be prejudicial.   Clearly the five month time period and the few week response to the service of the current lawsuit in the present case falls within the time period of *Rota-Mclarty* and *Patten* that is not considered prejudicial at all.

In the present case there was also almost no trial orientated activity at all.   In *Maxum*, the party moving for arbitration had attended some depositions, noticed three depositions, propounded interrogatories and document requests.   Nevertheless the court found no prejudice to the party opposing arbitration.

In *Microstrategy*,   there were "many motions, responses, and other procedural maneuvers (more than 50, according to Lauricia)…. and there is no doubt that the litigation involved the expenditure of substantial sums of money by all involved."   But even so the court ruled "Although Lauricia makes a strong argument that MicroStrategy undertook its "remarkably aggressive" course of litigation for the sole purpose of wearing her out, both emotionally and financially, we hold only that Lauricia failed to carry her "heavy burden" of establishing that she suffered legally significant prejudice from MicroStrategy's litigation activities."

In *Rota-McLarty* "Santander   utilized the litigation machinery in a few — mostly minimal — ways: it removed the complaint to federal court, filed an answer, proposed a bifurcated discovery plan, took Rota-McLarty's deposition on both phase one and phase two issues, and waited for clarity in the law in order to avoid class arbitration. No dispositive motions were filed. The court also found Rota-McLarty has failed to establish the prejudice necessary to justify finding Santander defaulted on its right to enforce the arbitration agreement under the FAA.

In *Patten,*   the party moving for arbitration engaged in discovery and motions,   filed the motion to compel arbitration just before the trial,   participated in pre-trial mediation, and caused the other party to incur $5862.52 in pre-litigation costs.   The court concluded that whether taken separately or taking all the factors together " "Given the comparatively restrained pre-trial activity

engaged in by Skanska, the strong policy favoring arbitration, and the heavy burden borne by the non-movant, we cannot conclude that Patten has made the requisite showing of prejudice."

In *Castanellos*,   the party moving for arbitration merely brought a collection action in small claims court and the court found no prejudice.

Also in the numerous out of state Federal District Court cases cited,   the courts found no prejudice in bringing a collection action in one court and then moving for arbitration in another case.

On the other hand, in *Fraser* the court did find prejudice after the party moving for arbitration had filed a motion for summary judgment, three motions to dismiss, and that two trial dates had already passed.   Also in *Barbagallo*, prejudice was found when the moving party sought discovery and disputed Plaintiff's requests in that suit; it filed a motion to dismiss in state court on Plaintiff's current suit, which it argued at a hearing and lost; and it again engaged in and disputed discovery with Plaintiff. Finally in the overturned case of *Novic* the party seeking arbitration had sold and assigned the debt to a third party who was involved in some litigation, following Maryland state law, the court did not seem to feel the need to find prejudice.

In the present case there was very little use of litigation machinery at all.   There were no depositions, no substantive motions for summary judgment or motions to dismiss,[7]   there was no trial, there was no written discovery, and either no costs or *de minimus* costs. The only actions involved the filing and serving of a suit by BSD, a notice of intention to defend by Plaintiff, a voluntary dismissal by BSD and a motion to withdraw the dismissal by BSD which was denied.

[7] Defendant made one non-substantive post-trial motion to withdraw his voluntary dismissal which was denied.

This case involved far less litigation than in *Maxum* where there were depositions, requests for documents and interrogatories, as well as notice of depositions, and the court found no prejudice. It is far less litigation than in *Microstrategy* which involved multiple motions, responses and other procedural moves (perhaps 50 in all), and substantial costs, yet the court found no prejudice. There was also far less litigation than in *Patten* where   the party moving for arbitration engaged in discovery and motions,   filed the motion to compel arbitration just before the trial,   participated in pre-trial mediation, and caused the other party to incur $5862.52 in pre-litigation costs.   Yet again the court found no prejudice.

The present case is even closer to *Rota McLarty* and *Castanellos* where there was a minimal or no discovery and the courts easily found no prejudice, as well as the numerous out of state cases, that merely involved bringing collection actions in an earlier case, and not finding prejudice in the current case

The case though is not even close to the few cases that found prejudice such as *Fraser* where the court did find prejudice after the party moving for arbitration had filed a motion for summary judgment, three motions to dismiss, and that two trial dates had already passed, as well as *Barbagallo*, where prejudice was found when the moving party sought discovery and disputed Plaintiff's requests in that suit; it filed a motion to dismiss in state court on Plaintiff's current suit, which it argued at a hearing and lost; and it again engaged in and disputed discovery with Plaintiff.

Based on all these cases and the minimal time and little use of litigation in the present case, there was clearly no prejudice to Plaintiff and no waiver of the right to compel arbitration.

## IV. CONCLUSION

For the above mentioned reasons the court should grant Defendant's Motion to Compel Arbitration.

Respectfully submitted,

_____

Bart Garry, Esq.
Law Office of Bart Garry
Federal Bar No. 28224
2833 Smith Avenue, #151
Baltimore, Maryland 21209
410.522.7766
Fax: 410.522.1021
Email: bg@bgarrylaw.com
Attorney for Defendant