IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDWARD SKINNER III,

    *Plaintiff*,

    v.

BART GARRY d/b/a LAW OFFICE
OF BART GARRY,

    *Defendant*.

Civil No. ELH-19-3559

**MEMORANDUM OPINION**

In this putative class action, plaintiff Edward Skinner III has sued defendant Bart Garry d/b/a Law Office of Bart Garry in connection with a debt collection suit lodged by Mr. Garry against Mr. Skinner in the Circuit Court for Baltimore City. ECF 1 (the "Complaint"). According to plaintiff, Mr. Garry engaged in deceptive and unfair debt collection practices, in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1601 *et seq.*, and the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code (2013 Repl. Vol.), § 14-201 of the Commercial Law Article. ECF 1, ¶¶ 31-41. Plaintiff seeks class certification as well as declaratory and injunctive relief, statutory and actual damages, attorney's fees, and costs. *Id.* at 10.

Mr. Garry has moved to compel arbitration and to stay plaintiff's suit, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. ECF 11. The motion is supported by a memorandum of law (ECF 11-1) (collectively, the "Motion to Compel") and five exhibits. ECF 11-2 to ECF 11-6. Plaintiff opposes the Motion to Compel (ECF 14) and has submitted one exhibit. ECF 14-1. Defendant has replied (ECF 19) and submitted eight more exhibits. ECF 19-1 to ECF 19-8.

After the conclusion of briefing on the Motion to Compel, plaintiff submitted a "Motion to

Supplement Documentation" (ECF 23, "Motion to Supplement"), advising the Court that Mr. Garry had sued plaintiff's counsel, Jane Santoni, in State court.  In addition, plaintiff filed an "Objection to Defendant's Affidavits," contesting the admissibility of two affidavits attached to defendant's reply.  ECF 25 ("Motion to Disregard").  Defendant opposes the Motion to Supplement (ECF 26) and the Motion to Disregard.  ECF 27.

The motions are fully briefed and no hearing is necessary to resolve them.  Local Rule 105.6.  As to the Motion to Supplement, the Court may take judicial notice of docket entries and filings in other cases.  *See* Fed. R. Civ. P. 201; *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x 200 (4th Cir. 2016).  Therefore, I shall grant the Motion to Supplement.  In contrast, because there is no basis to justify the wholesale rejection of ECF 19-1 and ECF 19-2, I shall deny the Motion to Disregard.  And, for the reasons that follow, I shall deny the Motion to Compel.

## I.  Factual Background

Mr. Skinner is a resident of Baltimore City.  ECF 1, ¶ 2.  Mr. Garry is a Maryland attorney engaged in the debt collection business.  *Id.* ¶ 3; *see* ECF 11-2 (Affidavit of Bart Garry).  He is the sole proprietor of a law firm known as "Law Office of Bart Garry."  ECF 11-2, ¶ 2.  In addition, Mr. Garry is the "President and 100% stock owner" of BSD Collections, Inc. ("BSD"), a debt collection company incorporated in Maryland.  *Id.* ¶ 1; *see* ECF 1, ¶ 13.  According to defendant, BSD and the Law Office of Bart Garry work hand-in-glove: BSD purchases charged-off debt and then the Law Office of Bart Garry seeks to collect the debt through settlement or litigation.  ECF 11-2, ¶ 3.

On November 18, 2015, Mr. Skinner entered into a Rental Purchase Agreement (the "Agreement") with Crest Financial Services, LLC ("Crest") for unspecified consumer goods.  ECF

1, ¶ 8; ECF 11-5 (Agreement).  The Agreement provided for a twelve-month lease during which Mr. Skinner was to make monthly payments totaling $3,205.37, after which Mr. Skinner would take title to the property.  ECF 11-5 at 1.  Alternatively, Mr. Skinner could purchase the property outright within ninety days of receipt for the sum of $1,674.80.  *See id.* at 1, 2.

The first page of the Agreement contains language in capital letters notifying that it is governed by an arbitration provision.  *Id.* at 1.  Specifically, it states, *id.*:

> THIS LEASE CONTAINS AN ARBITRATION PROVISION (SEE §15). UNLESS YOU PROMPTLY REJECT THE ARBITRATION PROVISION (SEE §15(a)), THE ARBITRATION PROVISION WILL HAVE A SUBSTANTIAL EFFECT ON YOUR RIGHTS IN THE EVENT OF A DISPUTE, INCLUDING YOUR RIGHT TO BRING OR PARTICIPATE IN A CLASS ACTION PROCEEDING.

By signing the Agreement, Mr. Skinner acknowledged that he had read and agreed to the terms of the Agreement, including the arbitration provision.  *See id.*

The Agreement's arbitration provision spans three pages.  *Id.* at 4-6.  Section 15(a) provides in part that unless the lessee timely rejects the arbitration provision, "either party may elect to arbitrate or require arbitration of any Claim under this Arbitration Provision."  *Id.* at 4.  Further, § 15(f) clarifies that if either party elects to arbitrate a claim, the lessee may not participate in a class action in court or in arbitration, either as a class representative or as a class member.  *Id.* at 5.

A "Claim" is defined in § 15(b) as "any claim, dispute or controversy between you and us (including any Related Party) that arises from or relates in any way to this Lease or the Property," including "our collection of any amounts you owe; or our disclosure of or failure to protect any information about you."  *Id.* at 4.  In turn, § 15(b) specifies that the terms "'we,' 'us' and 'our' include our 'Related Parties,'" which are Crest's "parent companies, subsidiaries and affiliates,"

as well as the "employees, directors, officers, shareholders, governors, managers and members" of Crest and its affiliates. *Id.*

Relevant here, the arbitration provision contains a choice of law clause. Specifically, § 15(i) provides, in pertinent part, *id.* at 5: "The Lease involves interstate commerce and this Arbitration Provision shall be governed by the FAA, and not Federal or state rules of civil procedure or evidence or any state laws that pertain specifically to arbitration. To the extent that state law bears on the enforceability of this Arbitration Law, Utah law shall govern."

Mr. Skinner alleges that he became disabled after executing the Agreement and could no longer afford his monthly payments. ECF 1, ¶ 9. He claims that he attempted to return the leased consumer goods, but Crest refused to accept them. *Id.* Thereafter, Crest allegedly charged off Mr. Skinner's unpaid financial obligation. *Id.* ¶ 10.

According to defendant, Crest sold and assigned Mr. Skinner's debt to Debt Management Partners, LLC ("DPM") on June 29, 2017. In support of this assignment, Mr. Garry submitted a "Bill of Sale" between Crest and DPM that is dated June 29, 2017, and bears the signature of "Bob Millerberg," the CEO of Crest. ECF 11-3. According to the Bill of Sale, Crest sold DPM over eighty thousand debt accounts with an "Aggregate Unpaid Balance" of $176,632,730.75. *See id.*

In addition, defendant has submitted an undated document that appears to be an electronic file pertaining to Mr. Skinner's account. ECF 11-4. The document contains, *inter alia*, the last four digits of Mr. Skinner's social security number, his last payment date, and the charge-off amount. ECF 11-4. The document is not dated nor is it authenticated by a custodian of records at Crest.

On March 4, 2019, DPM sold and assigned a portfolio of debt accounts, including that of Mr. Skinner, to Cherrywood Enterprise, LLC ("Cherry"). ECF 19-1 (Affidavit of Craig M.

Geisler), ¶ 2.  Pursuant to the Bill of Sale, DPM "assign[ed] and transfer[ed] to [Cherry], its successors and assigns, all of [DPM's] rights, title, and interest in each and every one of the Accounts" covered by the transaction.  ECF 19-4 (3/4/2019 Assignment and Bill of Sale).  Craig M. Geisler, Cherry's President, attests that Mr. Skinner's account was part of the transaction.  ECF 19-1, ¶ 2.  Further, Mr. Geisler states that DPM provided Cherry with a copy of the Agreement executed by Mr. Skinner as well as records reflecting the assignment of Mr. Skinner's debt from Crest to DPM.  *Id.* ¶ 3.  Although Cherry did not create these documents, Mr. Geisler advises that they "have been incorporated into [Cherry's] own business records" and Cherry has "relied upon them in conducting [its] business."  *Id.*

The next day, March 5, 2019, Cherry sold 307 debt accounts to BSD, including Mr. Skinner's.  ECF 19-5 (3/5/2019 Assignment and Bill of Sale); *see* ECF 19-1, ¶¶ 4-5.  Like the contracts between Crest and DPM and DPM and Cherry, the bill of sale between Cherry and BSD provides that Cherry "assign[ed] and transfer[ed]" its "rights, title, and interest in each and every one of the Accounts" to BSD.  ECF 19-5.  Both Mr. Garry and Mr. Geisler aver that the Bill of Sale is authentic and that Mr. Skinner's account was included in the transaction.  ECF 19-1, ¶¶ 4-5; ECF 19-2, ¶¶ 4.

On August 12, 2019, BSD filed suit against Mr. Skinner in the Circuit Court for Baltimore City.  *See BSD Collections, Inc. v. Skinner*, No. 01010018450-2019 (Balt. Cir. Ct.).  Plaintiff claims that the suit was frivolous because it was filed more than three years after the last payment and therefore was barred by the statute of limitations.  ECF 1, ¶¶ 14, 16.  Furthermore, plaintiff alleges that Mr. Garry improperly sought $250 in attorneys' fees despite not being entitled to such an award because he was not representing a client.  *Id.* ¶ 15.  After Mr. Skinner filed a notice of

his intention to defend the suit, BSD dismissed the action, with prejudice, on December 12, 2019. *See BSD Collections*, No. 01010018450-2019; *see also* ECF 1, ¶ 17.

This suit followed on December 14, 2019.  ECF 1.  On January 7, 2020, defendant moved to compel arbitration.  ECF 11. As noted, plaintiff opposed the Motion (ECF 14) and Mr. Garry replied.  ECF 19.

On February 11, 2020, plaintiff filed his Motion to Supplement, notifying the Court that Mr. Garry sued plaintiff's counsel, Jane Santoni, in State court in connection with this litigation. ECF 23; *see* ECF 23-1 (Jane Santoni Affidavit); ECF 23-2 (Circuit Court Complaint); *see also Garry v. Santoni*, No. 24C20000003 (Balt. Cir. Ct.).  Mr. Garry asserted claims, *inter alia*, for defamation, intentional misrepresentation, "unfair or deceptive trade practices," and "abuse of process."  ECF 23-2.  The action was voluntarily dismissed without prejudice on April 17, 2020. *See Garry*, No. 24C20000003.

Additional facts are included, *infra*.

## II.  Legal Standards

### A. The Federal Arbitration Act

Mr. Garry moves to compel arbitration and to partially dismiss or stay this action pursuant to the FAA, 9 U.S.C. § 1 *et seq.*

"Arbitration is a matter of contract."  *Mey v. DIRECTV, LLC,* ___ F.3d ___, 2020 WL 4660194, at *2 (4th Cir. Aug. 7, 2020).  Enacted in 1925, the FAA "requires courts to enforce covered arbitration agreements according to their terms."  *Lamps Plus, Inc. v. Varela*, ___ U.S. ___, 139 S. Ct. 1407, 1412 (2019); *see also Mey* 2020 WL 4660194, at *2; *McCormick v. Am. Online, Inc.*, 909 F.3d 677, 679 (4th Cir. 2018).  Under § 2 of the FAA, an arbitration contract is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract."   Thus, the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'"   *Epic Sys. Corp. v. Lewis*, ___ U.S. ___, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also McCormick*, 909 F.3d at 680 ("[T]he FAA elevates the arbitration of claims as a favored alternative to litigation when the parties agree in writing to arbitration.").

Indeed, the FAA "places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  Therefore, they are enforced according to their terms.  *Mey*, 2020 WL 4660194, at *2.

As noted, defendant moves to compel arbitration.  In *Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002), the Fourth Circuit explained, *id.* at 500-01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)):

> In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."

The *Adkins* Court also said, 303 F.3d at 500: "A district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview."   Accordingly, a court must "engage in a limited review to ensure that the dispute is arbitrable—*i.e.*, that a valid agreement exists between the parties and that the specific dispute falls within the substantive scope of that agreement."   *Murray v. United Food and Commercial Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002).

Section 3 of the FAA is also relevant.  It provides, 9 U.S.C. § 3:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the

issue involved in such suit or proceeding is referable to arbitration under such an
agreement, shall on application of one of the parties stay the trial of the action until
such arbitration has been had in accordance with the terms of the agreement,
providing the applicant for the stay is not in default in proceeding with such
arbitration.

Thus, the Fourth Circuit has said: "The FAA requires a court to stay 'any suit or
proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing
for such arbitration.' This stay-of-litigation provision is mandatory." *Adkins*, 303 F.3d at 500
(quoting 9 U.S.C. § 3)).   Nevertheless, in lieu of a stay, some courts have determined that
"dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice
Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001); *see Willcock
v. My Goodness! Games, Inc.*, PWG-16-4020, 2018 WL 3970474, at *4 (D. Md. Aug. 20, 2018);
*Kabba v. Ctr.*, PWG-17-211, 2017 WL 1508829, at *2 (D. Md. Apr. 27, 2017) (same), *aff'd*, 730
F. App'x 141 (4th Cir. 2018).

Under 9 U.S.C. § 4, a "party aggrieved by the alleged failure, neglect, or refusal of another
to arbitrate under a written agreement for arbitration" may petition a district court "for an order
directing that such arbitration proceed in the manner provided for in such agreement."   Section 4
further provides that, when presented with such a petition, a court

shall hear the parties, and upon being satisfied that the making of the agreement for
arbitration . . . is not in issue, the court shall make an order directing the parties to
proceed to arbitration in accordance with the terms of the agreement.

Conversely, § 4 provides that if the "making of the arbitration agreement . . . be in issue,"
then "the court shall proceed summarily to the trial thereof."   *Id*.  Thus, § 4 ordinarily requires the
district court, not an arbitrator to "decide whether the parties have formed an agreement to
arbitrate." *Berkeley Co. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019); *see Granite
Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 296 (2010) (explaining that dispute over

8

formation of agreement to arbitrate "is generally for court[] to decide"); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 637 (4th Cir. 2002).  However, the Supreme Court has said "that parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, ___ U.S. ___, 139 S. Ct. 524, 529 (2019) (internal quotation marks omitted).

"Whether a party has agreed to arbitrate an issue is a matter of contract interpretation:  '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"  *Levin v. Alms and Assoc., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (alteration in *Levin*) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 92 (4th Cir. 1996)); *see Mey*, 2020 WL 4660194, at *5; *Berkeley*, 944 F.3d at 236; *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 913 F.3d 409, 415 (4th Cir. 2019).  That said, the "FAA's policy of favoring arbitration augments 'ordinary rules of contract interpretation,' and requires all ambiguities to be resolved in favor of arbitration."  *Ashford v. Pricewaterhouse Coopers LLP*, 954 F.3d 678, 682-83 (4th Cir. 2020) (quoting *Choice Hotels Int'l*, 252 F.3d at 710); *see Levin*, 634 F.3d at 266 ("The 'heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.'"); *see also Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013).

### B.  Rule 12(b)(3)

The Supreme Court has observed that an arbitration clause is "a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute."  *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).  In *Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006), the Fourth Circuit determined that "a motion to dismiss based on a forum-selection clause," such as an

arbitration provision, "should be properly treated under Rule 12(b)(3) as a motion to dismiss on

the basis of improper venue."   The *Sucampo* Court explained, *id.* at 548 (internal and external

citations omitted) (my alteration):

> [T]reating a motion to dismiss on the basis of a forum-selection clause under Rule 12(b)(1) presents practical difficulties that undercut the benefits gained from enforcement of the clauses.  For example, the court must raise the issue of subject-matter jurisdiction *sua sponte*, if necessary.  *See* Fed. R. Civ. P. 12(h)(3).  Thus, in cases involving forum-selection clauses, both district and circuit courts would be under an obligation to confirm that the clause was not applicable before reaching the merits of the action. . . .  More importantly a motion to dismiss under Rule 12(b)(1) is non-waivable and may be brought at any time—even on appeal— regardless of whether a litigant raised the issue in an initial pleading.  Litigants, therefore, could hold back forum-selection clause objections, until after discovery—or even an adverse verdict.

Moreover, the Fourth Circuit has recognized that Rule 12(b)(6) "is not the appropriate

motion for enforcing a forum-selection clause."   *Sucampo*, 471 F.3d at 549.  It explained that

"because a 12(b)(6) motion may be brought at any time prior to adjudication on the merits,

analyzing forum-selection clauses under Rule 12(b)(6) would present some of the same timing

concerns as in the 12(b)(1) context."   *Id.* (citations omitted).  The Court reasoned: "Analyzing

forum-selection agreements under Rule 12(b)(3) would avoid the doctrinal and timing

disadvantages of utilizing Rule 12(b)(1) or (6) and be consistent with Supreme Court precedent."

*Id.* (citing *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285 (11th Cir. 1998) (finding

that motions to dismiss based on forum-selection clause should be analyzed under Rule 12(b)(3)

based on the Supreme Court's decision in *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988))).

Since *Sucampo*, the Fourth Circuit has reiterated that a challenge based on a forum-

selection clause, including an arbitration clause, should be addressed by way of a motion to dismiss

for improper venue under Rule 12(b)(3).  *See Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d

355, 365 n.9 (4th Cir. 2012).  Nevertheless, other judges of this court have considered motions to

dismiss in favor of arbitration under Rule 12(b)(1) and Rule 12(b)(6).  *See, e.g., Willcock*, 2018 WL 3970474, *3 (D. Md. Aug. 20, 2018) (collecting cases); *Garrett v. Monterey Fin. Servs., LLC*, JKB-18-325, 2018 WL 3579856, at *2 (D. Md. July 25, 2018) ("[M]otions to dismiss in connection with a valid arbitration agreement are often brought under Rule 12(b)(6) based on the observation that the existence of a valid arbitration clause does not technically deprive the Court of subject matter jurisdiction. . . . However, courts have also found it proper to dismiss claims subject to arbitration agreements under Rule 12(b)(1)." (citations omitted)); *Lomax v. Weinstock, Friedman & Friedman, P.A.*, CCB-13-1442, 2014 WL 176779, at *2 (D. Md. Jan. 15, 2014) ("Courts have found it proper to dismiss claims subject to arbitration agreements under both Rule 12(b)(1) and Rule 12(b)(6)."), *aff'd*, 583 F. App'x 100 (4th Cir. 2014).

In light of the Fourth Circuit's guidance in *Sucampo*, I shall construe defendant's motion to dismiss as one brought under Rule 12(b)(3).  *See, e.g., Am. Ins. Mktg. Corp. v. 5 Star Life Ins. Co.*, DKC-13-0560, 958 F. Supp. 2d 609, 612 (D. Md. 2013) (considering a motion to dismiss based on a forum selection clause pursuant to Rule 12(b)(3)); *Enter. Info. Mgmt., Inc. v. SuperLetter.com, Inc.*, DKC-13-2131, 2013 WL 5964563, at *3 (D. Md. Nov. 7, 2013) (considering a motion to dismiss in favor of arbitration pursuant to Rule 12(b)(3)).

In the Fourth Circuit, when a challenge to venue is raised under Rule 12(b)(3), the plaintiff bears the burden of demonstrating that venue is appropriate.  *Bartholomew v. Va. Chiropractors Ass'n,* 612 F.2d 812, 816 (4th Cir. 1979), *cert. denied*, 446 U.S. 938 (1980), *overruled on other grounds by Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119 (1982); *accord Tinoco v. Thesis Painting, Inc.*, GJH-16-752, 2017 WL 52554, at *2 (D. Md. Jan. 3, 2017); *Jones v. Koons Auto. Inc.,* 752 F. Supp. 2d 670, 679 (D. Md. 2010).  If the court does not hold an evidentiary hearing, "the plaintiff need only make a prima facie showing that venue is proper."  *CareFirst, Inc. v.*

*Taylor*, 235 F. Supp. 3d 724, 732 (D. Md. 2017) (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)).  "In assessing whether there has been a prima facie venue showing, [the court views] the facts in the light most favorable to the plaintiff."  *Aggarao*, 675 F.3d at 366.  And, the court may "freely consider evidence outside the pleadings . . . ."  *Sucampo*, 471 F.3d at 550; *see also Aggarao*, 675 F.3d at 365-56 ("On a motion to dismiss under Rule 12(b)(3), a court is permitted to consider evidence outside the pleadings.");  *Taylor v. Shreeji Swami, Inc.*, PWG-16-3787, 2017 WL 1832206, at *1 (D. Md. May 8, 2017) (same); *Convergence Mgmt. Assocs., Inc. v. Callender*, TDC-15-4015, 2016 WL 6662253, at *2 (D. Md. Nov. 10, 2016) (same).

Because "'it is possible for venue to be proper in more than one judicial district,' the question is not whether a given district is the best venue, but whether the events or omissions that occurred there are 'sufficiently substantial.'"  *Carefirst*, 235 F. Supp. 3d at 732 (quoting *Mitrano*, 377 F.3d at 405).  And, in considering "whether events or omissions are sufficiently substantial to support venue . . . , a court should not focus only on those matters that are in dispute or that directly led to the filing of the action."  *Mirtano*, 377 F.3d at 406 (citation omitted).  Instead, "it should review 'the entire sequence of events underlying the claim.'"  *Id.*; *accord Taylor*, 2017 WL 1832206, at *1; *Callender*, 2016 WL 6662253, at *2.

As indicated, a motion to dismiss for improper venue, filed under Rule 12(b)(3), "allows the court to freely consider evidence outside the pleadings . . . ."  *Sucampo*, 471 F.3d at 550. Therefore, to the extent permitted by the Federal Rules of Evidence, the Court shall consider the various exhibits submitted by the parties.

### C.  Choice of Law

According to Mr. Garry, Utah law determines whether a valid agreement to arbitrate exists because the Agreement contains a choice-of-law clause specifying Utah law.  ECF 11-1 at 7.  In

contrast, Mr. Skinner asserts that Maryland law governs the Agreement because Maryland's choice-of-law rules apply the law of the jurisdiction where the contract was formed, and there is no dispute that the Agreement was formed in Maryland.  ECF 14 at 2.

"[I]nterpretation of private contracts is ordinarily a question of state law."  *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989); *accord James v. Circuit City Stores, Inc.*, 370 F.3d 417, 421-22 (4th Cir. 2004).  Therefore, because Maryland is the forum state, I must apply Maryland substantive law, including its choice of law rules, to determine which state's substantive law applies to the Agreement.  *Small v. WellDyne, Inc*., 927 F.3d 169, 173 n.3 (4th Cir. 2019); *Francis v. Allstate Ins. Co*., 709 F.3d 362, 369 (4th Cir. 2013); *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co*., 566 F.3d 150, 154 (4th Cir. 2009).

It is true that, absent a choice-of-law provision, Maryland law recognizes the principle of *lex loci contractus* for contract claims.  *See Cunningham v. Feinberg*, 441 Md. 310, 326, 107 A.3d 1194, 1204 (2015).  Under that doctrine, a court must apply the substantive law of the state where the contract was formed.  *See id.*; *see also Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 925 A.2d 636, 648-49 (2007); *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995)

However, when a contract contains a choice-of-law provision, Maryland courts follow § 187(2) of the *Restatement (Second) of Conflict of Laws* (1971) ("Restatement"), which states: "The law of the state chosen by the parties to govern their contractual rights will be applied."  *See, e.g.*, *Ace Am. Ins. Co. v. Grand Banks Yachts, Ltd.*, 587 F. Supp. 2d 697, 704 (D. Md. 2008) (applying Restatement § 187(2)).  Thus, a court must apply the law specified in the choice-of-law provision "unless the choice of law jurisdiction has no substantial relationship to the transaction, or there is a fundamental policy difference in the laws of another jurisdiction with a more

13

substantial interest in the parties or the transaction." *United States for use & benefit of Tusco, Inc. v. Clark Constr. Grp.*, 235 F. Supp. 3d 745, 752 n.9 (D. Md. 2016) (citing *Jackson v. Pasadena Receivables, Inc.*, 398 Md. 611, 921 A.2d 799, 803-05 (2011)); *see Restatement* § 187.

Section 15(i) of the Agreement expressly provides that Utah law "shall govern" the enforceability of the arbitration provision. ECF 11-5 at 5. Notably, plaintiff does not challenge the validity of this provision. Therefore, to the extent necessary, I shall apply Utah law to the terms of the Agreement's arbitration provision. *See Berkeley Cty. Sch. Dist.*, 944 F.3d at 236.

### III. Discussion

Mr. Garry moves to compel arbitration of plaintiff's claims on an individual, non-class basis. ECF 11. Mr. Skinner's suit is subject to arbitration, defendant contends, because BSD is an assignee of the rights originally held by Crest, and § 15 of the Agreement requires the arbitration of plaintiff's suit against Mr. Garry. ECF 11 at 8-11. In addition, defendant maintains that his debt collection action against Mr. Skinner in State court does not constitute a waiver of his right to compel arbitration. *Id.* at 11-12.

Mr. Skinner opposes arbitration on three grounds. ECF 14 at 5-10. First, plaintiff argues that Mr. Garry has failed to demonstrate a chain of title for Mr. Skinner's debt between Crest and BSD and therefore Mr. Garry cannot enforce the arbitration provision in the Agreement. *Id.* at 5-6. Second, plaintiff posits that the Agreement's arbitration provision does not cover Mr. Garry because he is not an officer or shareholder of Crest, and § 15 does not address its assignability. *Id.* at 6-8. Third, Mr. Skinner argues that Mr. Garry waived his right to arbitrate by suing him and Ms. Santoni in State Court. *Id.* at 8-10; ECF 23.

I shall address each issue, but in reverse order.

## A. Waiver

As an initial matter, plaintiff's contention that Mr. Garry waived his right to compel arbitration is without merit. *See* ECF 14 at 8-10. A litigant waives his right to invoke the FAA if he "'so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay.'" *Rota-McLarty v. Santander Consumer USA, Inc*., 700 F.3d 690, 702 (4th Cir. 2012) (alteration in original) (quoting *Forrester v. Penn Lyon Homes, Inc*., 553 F.3d 340, 343 (4th Cir. 2009); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 240-41 (4th Cir. 2017); *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc*., 817 F.2d 250, 252 (4th Cir. 1987). That said, "even in cases where the party seeking arbitration has invoked the 'litigation machinery' to some degree, '[t]he dispositive question is whether the party objecting to arbitration has suffered actual prejudice.'" *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) (quoting *Fraser*, 817 F.2d at 252); *see Rota-McLarty*, 700 F.3d at 702.

The Fourth Circuit has instructed that two factors "'specifically inform'" the "'inquiry into actual prejudice: (1) the amount of the delay; and (2) the extent of the moving party's trial-oriented activity.'" *Degidio v. Crazy Horse Saloon & Rest. Inc*., 880 F.3d 135, 140-41 (4th Cir. 2018) (citation omitted). Regarding the first factor, "a delay of several months, without more, is insufficient to demonstrate the opposing party suffered actual prejudice." *Rota-McLarty*, 700 F.3d at 703. As to the second factor, removal of a case to federal court or participation in discovery do not suffice to constitute a waiver of arbitration. *See Rota-McLarty*, 700 F.3d at 704.

Under this standard, a party who spends six months litigating through discovery before requesting arbitration does not waive his right to seek arbitration. *See id.* at 703-04. In contrast, the Fourth Circuit has suggested that a litigant will have been deemed to have waived his right to

invoke arbitration where he waits until after an adverse judgment is rendered to invoke the FAA. *See Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 947 F.3d 234, 238-39 (4th Cir. 2020).

On the facts here, plaintiff has not carried his "heavy burden to prove default." *Rota-McLarty*, 700 F.3d at 702. Mr. Skinner filed this suit on December 14, 2019. ECF 1. In response, Mr. Garry filed the Motion to Compel Arbitration on January 8, 2020. ECF 11. A delay of 25 days cannot support a finding of prejudice. *See id.* at 703 (describing six-and-half-month delay as "relatively short"). Indeed, 25 days is not even in the ballpark of prejudicial delay. *Compare Forrester*, 553 F.3d at 343–44 (default proper where party sought arbitration after litigation began more than two years prior); *Fraser*, 817 F.2d at 252-53 (same, with four-year delay). Moreover, plaintiff has put forth no concrete facts to show that he has been prejudiced by the delay created by the filing of the Motion to Compel Arbitration. This alone is fatal to plaintiff's argument. *See Rota-McLarty*, 700 F.3d at 703 (rejecting plaintiff's "general assertion" that she was prejudiced by six-month delay as "unsubstantiated and unconvincing" where nothing in the record supports a finding that [she] was prejudiced by the length of the delay").

Likewise, Mr. Skinner has not established that Mr. Garry has engaged in substantial litigation activity, either in State court or here. Mr. Garry filed the collection action against Mr. Skinner in the circuit court on August 12, 2019; he dismissed the suit on December 12, 2019, after Mr. Skinner filed notice of his intention to defend the action. *See BSD Collections*, No. 01010018450-2019. Similarly, Mr. Garry's suit against Ms. Santoni was voluntarily dismissed approximately two months after it was filed. *See Garry*, No. 24C20000003. Consequently, Mr. Garry never filed a dispositive motions or pursued discovery. *See Rota-McLarty*, 700 F.3d at 703 n.15 (observing that whether a party was required to respond to dispositive motions is relevant to the prejudice analysis). And, plaintiff offers no explanation as to why he was prejudiced by the

mere filing of a collection action or a separate suit against his attorney in State court. *Compare Barbagallo v. Niagara Credit Sols., Inc.*, DKC-12-1885, 2012 WL 6478956, at *3 (D. Md. Dec. 4, 2012) (finding prejudice where the defendant moved to dismiss the plaintiff's state court action before seeking to compel arbitration and then removed the case before the state court could rule). Mr. Garry's activities in this Court have been similarly minimal; he has only sought to invoke the FAA.

Accordingly, Mr. Skinner fails to show that he was prejudiced by Mr. Garry's litigation behavior for the purposes of the FAA. It follows that Mr. Garry has not waived his right to invoke arbitration.

### B.  Scope of the Agreement

Plaintiff's argument that the Agreement's arbitration provision does not cover this suit also falls flat. As noted, pursuant to § 15(a) of the Agreement, Crest "may elect to arbitrate or require arbitration of any Claim under this Arbitration Provision." ECF 11-5 at 4. Mr. Skinner's suit qualifies as a "Claim" under the plain language of § 15(b)(ii) because it "arises from . . . [his] Lease." *Id.* Specifically, plaintiff's suit concerns the "collection of any amounts [that he] owe[s]" under the Agreement. *Id.*

Further, Mr. Garry is covered under the Agreement, pursuant to § 15(b)(i). As noted, under § 15(b)(i), the arbitration provision applies to suits brought against Crest as well as "Related Parties," such as "directors, officers, [and] shareholders" of Crest. *Id.* Therefore, if Crest validly assigned its rights to BSD, then BSD, as the assignee, stands in the shoes of Crest. In that circumstance,   Mr. Garry, as the president and sole owner of BSD and sole proprietor of the Law Office of Bart Garry, plainly qualifies as a "Related Part[y]" of BSD. Putting two and two together, if BSD is the lawful assignee of Crest's rights, then Mr. Garry can invoke § 15 of the Agreement

to compel arbitration because plaintiff's suit is a "Claim" brought against a "Related Part[y]" of BSD.

Plaintiff resists this conclusion, arguing that because the Agreement does not address assignments, the arbitration provision does not apply to assignees. But, the Agreement's silence on this point is inapposite. Under Utah law, an "'assignment is a transfer of property or some other right from one person (the assignor) to another (the assignee), which confers a complete and present right in the subject matter to the assignee.'" *Timber Lakes Prop. Owners Assoc. v. Cowan*, 2019 UT App 160, ¶ 32, 451 P.3d 277, 288 (quoting *Kirton McConkie PC v. ASC Utah LLC*, 2016 UT App 200, ¶ 10, 383 P.3d 446). As a result, the "assignment of an interest in a contract gives the assignee the same rights as the assignor and nothing more." *Jack B. Parson Cos., v. Nield*, 751 P.2d 1131, 1133 (Utah 1988). In other words, an "'assignee stands in the shoes of the assignor.'" *Sunridge Dev. Corp. v. RB & G Eng'g, Inc*., 2010 UT 6, ¶ 13, 230 P.3d 1000, 1003 (alterations and citation omitted).

The Supreme Court has held that "a litigant who was not a party to the relevant arbitration agreement may invoke § 3 [of the FAA] if the relevant state contract law allows him to enforce the agreement." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). As a general matter, Utah law permits the assignment of property and contractual rights. *See Gilroy v. Lowe*, 626 P.2d 469, 472 (Utah 1981) ("It is beyond question that ordinarily property or contract rights may be transferred to an assignee."); *see, e.g*., *Ramirez v. Midland Fund., LLC*, 2019 WL 2568478, at *5 (N.D. Ill. June 21, 2019) (applying Utah law to hold that a debt collection business could enforce an arbitration clause against debtors as an assignee). Therefore, in light of background principles of Utah contract law, there was no need for § 15 of the Agreement to reference assignees explicitly.

In sum, if the Agreement was validly assigned to Mr. Garry, then he can invoke its arbitration provision, which plainly covers Mr. Skinner's suit.

## C. Assignment

This case thus boils down to whether defendant has provided sufficient evidence that he is the assignee of Mr. Skinner's debt.  Because I conclude that defendant has not demonstrated an unbroken chain of assignment, he cannot, at this juncture, enforce the Agreement's arbitration provision against Mr. Skinner.

To demonstrate that Mr. Skinner's debt was properly assigned to BSD, defendant relies primarily on a series of exhibits that purportedly trace the transfer of Mr. Skinner's debt from Crest to DPM, from DPM to Cherry, and from Cherry to BSD.  *See* ECF 11-3 to ECF 11-6; ECF 19-3 to ECF 19-8.  These documents include a document titled "Bill of Sale" from Crest to DPM (ECF 11-3); a document purporting to be Mr. Skinner's account with Crest (ECF 11-4); a Bill of Sale from DPM to Cherry (ECF 19-4); a Bill of Sale from Cherry to BSD (ECF 19-5); and a document titled "Crest Financial - Payment History," dated August 13, 2017.  ECF 19-6.

These documents are hearsay; they were made outside of Court and are offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801.  Therefore, these documents are inadmissible unless a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise.  Fed. R. Evid. 802; *see Graves v. Lioi*, 930 F.3d 307, 326 n.15 (4th Cir. 2019) (observing that "'hearsay, like other evidence inadmissible at trial, is ordinarily an inadequate basis for summary judgment'" (citation omitted); *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) ("It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment."); *see e.g.*, *Whittaker v. Morgan State Univ.*,

524 F. App'x 58, 60 (4th Cir. 2013) (declining to consider an unauthenticated letter on summary judgment).

According to defendant, these documents are excepted from hearsay under the exception for "Records of a Regularly Conducted Activity," commonly referred to as the "business records exception," set forth in Fed. R. Civ. Evid. 803(6).  ECF 19 at 7.  Rule 803(6) allows for the admission of a "record of an act, event, condition, opinion, or diagnosis" if

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) neither the opponent does not show that the source of information nor or the method or circumstances of preparation indicate a lack of trustworthiness.

Relevant here, pursuant to Subsection (D), the business records exception requires that the purported document be authenticated by the testimony or declaration of a "custodian or other qualified person."  Fed. R. Evid. 902(11).  To be "qualified," the witness need not be the author of the document.  *See Gen. Ins. Co. of Am. v. U.S. Fire Ins. Co*., 886 F.3d 346, 357 (4th 2018); *Callahan v. Pac. Cycle, Inc*., 756 F. App'x 216, 225 (4th Cir. 2018).  But, the witness "must be able to testify that the record was 'kept in the course of a regularly conducted business activity and also that it was a regular practice of that business activity to make the record.'"  *Gen. Ins. Co*., 886 F.3d at 357 (quoting *United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014)).  Thus, in order to authenticate a document, the witness "must be familiar with the creation and record keeping procedures of the organization in order to establish the records' trustworthiness."  *United States v.*

*Bacas*, 662 F. Supp. 2d 481, 487 (E.D. Va. 2009); *see, e.g.*, *United States v. Porter*, 821 F.2d 968, 977 (4th Cir. 1987) (concluding that security guard who merely had access to company files but did not know how the records were created or stored was not a "qualified witness").

Defendant contends that his affidavit (ECF 19-1) and Mr. Geisler's affidavit (ECF 19-2) suffice to authenticate the various exhibits and thus establish each link in the chain of assignment from Crest to BSD.  ECF 19 at 6-8.  Plaintiff disagrees, insisting that although Mr. Geisler may be able to authenticate the documents underlying the transfer of Mr. Skinner's debt from DPM to Cherry and from Cherry to BSD, he lacks the personal knowledge to authenticate the documents purporting to transfer plaintiff's debt from Crest to DPM.  ECF 14 at 5-6; ECF 25 at 1-2.

The case of *Webb v. Midland Credit Management , Inc.*, No. 11 C 5111, 2020 WL 2022013 (N.D. Ill. May 31, 2012), is instructive.  As here, *Webb* involved a motion to compel arbitration brought by a debt collection company, Midland Credit Management Inc. ("Midland"), in response to a putative class action brought under the FDCPA.  *Id.* at *1.  The plaintiff's credit card debt had been assigned multiple times before Midland acquired it.  Specifically, the debt traveled from Citibank, the original creditor, to Sherman Originator III, LLC; from Sherman Originator III to Sherman Originator LLC; from Sherman Originator LLC to LVNV Funding LLC; from LVNV Funding to Sherman Acquisition, LLC; and from Sherman Acquisition to Midland.  *See id.*

The plaintiff opposed arbitration, arguing, *inter alia*, that Midland had failed to establish an unbroken chain of assignment such that it could enforce the arbitration clause in Citibank's contract.  *Id.* at *3.  Midland countered that it had satisfied each link in the chain by providing the court with a declaration from one of its employees attesting to the authenticity of the various bills of sales and electronic records reflecting each transfer.  *Id.*

The court agreed with the plaintiff.  *Id.* at *5.  Because the declarant was a custodian of records at Midland, the court observed that the declarant could authenticate the documents concerning the sale of the plaintiff's debt from Sherman Acquisition to Midland for the purposes of Rule 803(6) and 902(11).  *See id.* at *4-5.  However, the court found that the declarant could not speak to the documents concerning the first three transfers of the plaintiff's debt because the declarant had no personal knowledge of the procedures that those entities used to create and preserve records.  *See id.*  Without those documents in evidence, Midland "[could not] show an unbroken chain of assignment entitling them to stand in Citibank's shoes and enforce the arbitration provision."  *Id.* at *5.  Therefore, the court denied the motion to compel arbitration

The application of Rules 902(11) and 803(6) leads to the same result here.  Much as in *Webb*, defendant has provided affidavits sufficient to authenticate some—but not all—of the links in the chain of assignment.  To be sure, Mr. Geisler's affidavit provides the necessary foundation for Cherry's records.  Mr. Geisler attests that he is the "custodian of records of all purchases and sales of charged off debt" for Cherry.  ECF 19-1, ¶ 1.  And, he avers that although he did not create the documents that DMP provided Cherry at the time of sale, he reviewed them and has "relied upon them in conducting our business."  *Id.* ¶ 2.  This testimony amply authenticates ECF 19-4, the Bill of Sale between DPM and Cherry.  In addition, Mr. Geisler attests that Cherry prepared the Bill of Sale assigning 307 debt accounts to BSD on March 5, 2019.  ECF 19-1, ¶¶ 2, 4.  This serves to authenticate ECF 19-5, the Bill of Sale between Cherry and BSD.

However, neither Mr. Geisler nor Mr. Garry purport to have personal knowledge of the record keeping practices of Crest or DPM.  Indeed, neither affidavit evidences any familiarity with how Crest or DPM produce and preserve records, such as ECF 19-2 and ECF 19-3.  Without this foundation, neither affiant is a "qualified" witness under Rule 902(11) who can authenticate these

documents as business records, pursuant to Rule 803(6).  It follows that I cannot consider ECF 19-2 and ECF 19-3 in resolving the Motion to Compel Arbitration.  Yet, as in *Webb*, without those exhibits, Mr. Garry has not established a chain of assignment that entitles him to invoke the arbitration provision in the Agreement.

Rather than try to plug these gaping holes in the chain of title, defendant urges the Court to ignore them, relying on *Bey v. Midland Credit Management*, GJH-15-1329, 2016 WL 1226648 (D. Md. Mar. 26, 2016).  In that case, too, Midland  moved to compel arbitration of the plaintiffs' FDCPA suit, and the plaintiffs, Malik Bey and Dawud Best, sought to defeat the motion by arguing that Midland could not establish the necessary chain of assignment to invoke arbitration clauses contained in contracts that Mr. Bey had signed with Citibank and Mr. Best with T-Mobile, the original creditors.  *See id.* at *1-3.

Judge Hazel rejected that contention, concluding that Midland had "submitted sufficient evidence" to show that it was the assignee of the plaintiffs' debts.  *Id.* at *5.  With respect to Mr. Bey's debt, Midland submitted a bill of sale, an accompanying affidavit of sale by Citibank, and an affidavit from a Midland employee.  As for Mr. Best, Midland submitted a bill of sale from T-Mobile and an affidavit from the same Midland employee.  *Id.*

The court acknowledged that the Midland employee lacked personal knowledge of the record keeping practices of Citibank and T-Mobile.  *Id.*  However, Judge Hazel observed that courts in other circuits have found that a document created by a third party may qualify as a business record if it was integrated into the custodian's records, the custodian relied upon the accuracy of the record, and the other requirements of Rule 803(6) were satisfied.  *Id.* (citing *Brawner v. Allstate Indem. Co*., 591 F.3d 984, 987 (8th Cir. 2010); *United States v. Adefehinti*, 510 F.3d 319, 326 (D.C. Cir. 2007)).  Thus, because Midland integrated the documents it received

23

from Citibank and T-Mobile into its business records and relied on them in pursuing the plaintiffs' debts, Judge Hazel found that the declarant could authenticate the documents for the purposes of Rule 803(6).  Accordingly, because Midland established that it was assignee of the plaintiffs' debt, Judge Hazel granted the motion to compel arbitration.  *Id.* at *6.

To my knowledge, the Fourth Circuit has not addressed this application of Rules 803(6) and 902(11).  *See Bank of N.Y. Mellon v. Adams*, No. 5:13-CV-245-BO, 2014 WL 3810631, at *1 (E.D.N.C. Aug. 1, 2014) (recognizing the paucity of on-point precedent).  But, as Judge Hazel pointed out, other courts, have found that a company that receives a document from a third party can lay a sufficient foundation to qualify the document as a business record if it (1) integrates the received record into its own business records; (2) relies on it in its day-to-day operations; and (3) the surrounding circumstances indicate trustworthiness.  *See, e.g.*, *Brawner v. Allstate Indem. Co.*, 591 F.3d 984, 988 (8th Cir. 2010) (collecting cases); *see also Pender v. Bank of Am. Corp.*, NO. 3:05-CV-00238-GCM, 2016 WL 7320894, at *5 (W.D.N.C. Dec. 15, 20016) (applying integration rule); *Adams*, 2014 WL 3810631, at *2 (same); *United States v. Ging-Hwang Tsoa*, No. 1:13cr137 (JCC), 2013 WL 5837649, at *3-5 (E.D. Va. Oct. 29, 2013) (same)

That said, the "business records exception is based on the indicia of reliability that attaches to a record created or maintained by an employer in the ordinary or regular course of their business."  *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 588 (6th Cir. 2009); *see* 2 MCCORMICK ON EVIDENCE § 286 (8th ed. 2020) ("The hearsay exception for regularly kept records is justified on grounds of trustworthiness . . . .").  Thus, the admission of integrated business records depends "on the particular facts of each case."  *U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation Trust v. Jones*, 925 F.3d 534, 540 (1st Cir. 2019).  To that end, courts have declined to apply the business records exception where the incorporated documents

lack indicia of trustworthiness.  *See Webb*, 2020 WL 2022013, at *4-5; *Henggeler v. Brumbaugh & Quandahl, P.C., LLO*, 894 F. Supp. 2d 1180, 1187 (D. Neb. 2012) (declining to accept declarant was qualified to authenticate business records created by other entity).  For instance, in *Webb*, 2020 WL 2022013, the court declined to admit third-party documents based on the declaration of another business custodian where two of the documents were undated.  *Id.* at *3.  Likewise, in *Henggeler*, 894 F. Supp. 2d 1180, the court refused to accept third-party documents that Midland sought to authenticate because the bill of sale for one transfer was missing and the account statement was "extensively redacted."  *Id.* at 1187-88.

In this case, there are reasons to question the trustworthiness of the exhibits.  In particular, ECF 19-6 is undated and heavily redacted.  Nor does it contain any indicia of having been created by Crest.  As a result, there is no way to verify that ECF 19-6 is a record of Mr. Skinner's Crest account, as Mr. Garry claims.  It follows that even if the Court recognized the integration rule utilized by Judge Hazel, its application would be inappropriate in this case.

Ultimately, prudence requires that defendant provide a declaration or affidavit from someone who has personal knowledge of the business practices of Crest and DPM and who can confirm that Mr. Skinner's debt was, in fact, transferred from Crest to DPM and DPM to Cherry.  Defendant has not established an unbroken chain of assignment that allows him to stand in the shoes of Crest and enforce the Agreement.  For that reason, the Motion to Compel Arbitration must be denied.

### IV. Conclusion

For the reasons set forth above, I shall deny the Motion (ECF 37), without prejudice.

An Order follows, consistent with the Memorandum Opinion.


Date: August 18, 2020                              /s/
                                         Ellen L. Hollander
                                         United States District Judge