IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDWARD SKINNER III,
   *Plaintiff*,

v.

BART GARRY d/b/a LAW OFFICE
OF BART GARRY,
   *Defendant*.

Civil No. ELH-19-3559

## MEMORANDUM OPINION

This Memorandum Opinion addresses the "Renewed Motion to Compel Arbitration and Stay Action," filed by defendant Bart Garry d/b/a Law Office of Bart Garry. ECF 33. In this putative class action, plaintiff Edward Skinner III has sued Mr. Garry in connection with a debt collection suit lodged by Mr. Garry against Mr. Skinner in the Circuit Court for Baltimore City. ECF 1 (the "Complaint"). According to plaintiff, Mr. Garry engaged in deceptive and unfair debt collection practices, in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1601 *et seq.*, and the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code (2013 Repl. Vol.), § 14-201 of the Commercial Law Article. ECF 1, ¶¶ 31-41. Plaintiff seeks class certification as well as declaratory and injunctive relief, statutory and actual damages, attorney's fees, and costs. *Id.* at 10.

Mr. Garry previously moved to compel arbitration and to stay plaintiff's suit, pursuant to the Federal Arbitration Act ("FAA" or the "Act"), 9 U.S.C. § 1 *et seq*. ECF 11. By Memorandum Opinion and Order of August 18, 2020, I denied the motion. ECF 29; ECF 30. In my view, Mr. Garry did not provide sufficient evidence to establish that he is the assignee of Mr. Skinner's debt and thus entitled to enforce the arbitration provision in the relevant agreement.

Mr. Garry has again moved to compel arbitration. ECF 33 (the "Motion"). The Motion is supported by eight exhibits. ECF 33-1 to ECF 33-8. Plaintiff opposes the Motion (ECF 36) and has submitted one exhibit. ECF 36-1. Defendant has replied (ECF 39) and submitted two more exhibits. ECF 39-1; ECF 39-2.

No hearing is necessary to resolve the Motion. Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

## I. Factual Background[1]

Mr. Skinner is a resident of Baltimore City. ECF 1, ¶ 2. Mr. Garry is a Maryland attorney engaged in the debt collection business. *Id.* ¶ 3; *see* ECF 33-3 (Aff. of Bart Garry). He is the sole proprietor of a law firm known as "Law Office of Bart Garry." ECF 33-3, ¶ 2. In addition, Mr. Garry is the "President and 100% stock owner" of BSD Collections, Inc. ("BSD"), a debt collection company incorporated in Maryland. *Id.* ¶ 1; *see* ECF 1, ¶ 13.

On November 18, 2015, Mr. Skinner entered into a Rental Purchase Agreement (the "Agreement") with Crest Financial Services, LLC ("Crest") for unspecified consumer goods. ECF 1, ¶ 8; *see* ECF 33-5 (Agreement). The Agreement provided for a twelve-month lease during which Mr. Skinner was to make monthly payments totaling $3,205.37, after which Mr. Skinner would take title to the property. ECF 33-5 at 1. Alternatively, Mr. Skinner could purchase the property outright within ninety days of receipt for the sum of $1,674.80. *See id.* at 1, 2.

The first page of the Agreement contains language in capital letters notifying that it is governed by an arbitration provision. *Id.* at 1. Specifically, it states, *id.*:

> THIS LEASE CONTAINS AN ARBITRATION PROVISION (SEE §15). UNLESS YOU PROMPTLY REJECT THE ARBITRATION PROVISION (SEE

---

[1] I incorporate by reference all relevant background information set forth in my Memorandum Opinion of August 18, 2020. ECF 28. The facts presented here are limited to those pertinent to the Motion.

§15(a)), THE ARBITRATION PROVISION WILL HAVE A SUBSTANTIAL EFFECT ON YOUR RIGHTS IN THE EVENT OF A DISPUTE, INCLUDING YOUR RIGHT TO BRING OR PARTICIPATE IN A CLASS ACTION PROCEEDING.

By signing the Agreement, Mr. Skinner acknowledged that he had read and agreed to the terms of the Agreement, including the arbitration provision. *See id.*

The Agreement's arbitration provision spans three pages. *Id.* at 4-6. Section 15(a) provides in part that unless the lessee timely rejects the arbitration provision, "either party may elect to arbitrate or require arbitration of any Claim under this Arbitration Provision." *Id.* at 4. Further, § 15(f) clarifies that if either party elects to arbitrate a claim, the lessee may not participate in a class action in court or in arbitration, either as a class representative or as a class member. *Id.* at 5.

A "Claim" is defined in § 15(b) as "any claim, dispute or controversy between you and us (including any Related Party) that arises from or relates in any way to this Lease or the Property," including "our collection of any amounts you owe; or our disclosure of or failure to protect any information about you." *Id.* at 4. In turn, § 15(b) specifies that the terms "'we,' 'us' and 'our' include our 'Related Parties,'" which are Crest's "parent companies, subsidiaries and affiliates" as well as the "employees, directors, officers, shareholders, governors, managers and members" of Crest and its affiliates. *Id.*

Mr. Skinner alleges that he became disabled after executing the Agreement and could no longer afford his monthly payments. ECF 1, ¶ 9. He claims that he attempted to return the leased consumer goods, but Crest refused to accept them. *Id.* Thereafter, Crest allegedly charged off Mr. Skinner's unpaid financial obligation. *Id.* ¶ 10.

According to defendant, Crest sold and assigned Mr. Skinner's debt to Debt Management Partners, LLC ("DMP") on June 29, 2017, as part of a sale of approximately 88,656 debt accounts

with an "Aggregate Unpaid Balance" of $176,632,730.75. ECF 33 at 3-4; *see* ECF 33-4 ("2017 Bill of Sale"); ECF 33-1 (Aff. of Chris Asbrock, Chief Operating Officer ("COO") of DMP, 9/18/2020), ¶ 2. In support of this assignment, Mr. Garry submitted a "Bill of Sale" between Crest and DMP, dated June 29, 2017. ECF 33-4. It bears the signature of "Bob Millerberg," the Chief Executive Officer ("CEO") of Crest. *Id.* Asbrock attests that DMP "kept that bill of sale in the ordinary course of its business and relie[d] upon it to establish good title to the accounts purchased from Crest." ECF 33-1, ¶ 2.

DMP also received a sale file from Crest "providing information about each of the charged off accounts" that it received from Crest. ECF 39-1 (Supplemental Aff. of Asbrock, 12/15/2020), ¶ 2. Although DMP did not create the data file, Mr. Asbrock states that the data "has been incorporated into the business records of DMP and was relied upon by DMP in conducting its business." *Id.* ¶ 2. Crest also transferred "electronic records" of the debt accounts to DMP, including documents related to Mr. Skinner's Crest account. *Id.* ¶ 3.

On March 4, 2019, DMP sold and assigned 307 of the debt accounts that it had purchased from Crest in June 2017, including Mr. Skinner's account, to Cherrywood Enterprise, LLC ("Cherry"). ECF 33-1, ¶ 4; ECF 33-2 (Aff. of Craig M. Geisler, Cherry's President), ¶ 3. The Assignment and Bill of Sale between DMP and Cherry provides that DMP "assign[ed] and transfer[ed] to [Cherry], its successors and assigns, all of [DMP's] rights, title, and interest in each and every one of the Accounts described in the Agreement." ECF 33-6 (3/4/2019 Assignment and Bill of Sale).

In addition, as part of the transaction, DMP prepared a data file for Cherry with information about each of the charged off accounts, including information identifying the debtor for each account. ECF 33-1, ¶ 2; *see* ECF 33-7. The file includes a line item for the Skinner account; it

identifies Skinner, *inter alia*, by his name, address, social security number, account number, and account balance. *See* ECF 33-7 at 20, 69; ECF 33-1, ¶ 4; ECF 33-2, ¶ 3. It also contains the same information for the other 306 debtors. ECF 33-2, ¶ 3.  Notably, the data file indicates that all the debts originated from Crest. *See* ECF 33-7.

Mr. Asbrock and Craig M. Geisler, Cherry's President, attest that Mr. Skinner's account was part of the sale between DMP and Cherry.  ECF 33-1, ¶ 4; ECF 33-2, ¶ 3.  Further, Mr. Geisler avers that DMP provided Cherry with a copy of the Agreement, originally executed between Mr. Skinner and Crest.  ECF 33-2, ¶ 3.

The next day, March 5, 2019, Cherry sold the same 307 debt accounts to BSD, including Mr. Skinner's account. ECF 33-8 (3/5/2019 Assignment and Bill of Sale); *see* ECF 33-2, ¶ 4.  Like the contracts between Crest and DMP and DMP and Cherry, the bill of sale between Cherry and BSD provides that Cherry "assigns and transfers" its "rights, title, and interest in each and every one of the Accounts" to BSD.  ECF 33-8.  Both Mr. Garry, BSD's President, and Mr. Geisler aver that the bill of sale is authentic and that Mr. Skinner's account was included in the transaction. ECF 33-2, ¶ 4; ECF 33-3, ¶¶ 4, 5.

On August 12, 2019, BSD filed suit against Mr. Skinner in the Circuit Court for Baltimore City. ECF 1, ¶ 14; *see BSD Collections, Inc. v. Skinner*, No. 01010018450-2019 (Cir. Ct. Balt. City).  Plaintiff claims that the suit was frivolous because it was filed more than three years after the last payment and therefore was barred by the statute of limitations.  ECF 1, ¶¶ 14, 16. Furthermore, plaintiff alleges that Mr. Garry improperly sought $250 in attorneys' fees, but was not entitled to such an award because he was not representing a client. *Id.* ¶ 15.  After Mr. Skinner filed a notice of intent to defend the suit, BSD dismissed the action, with prejudice, on December 12, 2019. ECF 1, ¶ 17.

5

This suit followed on December 14, 2019.  ECF 1.  Thereafter, defendant moved to compel arbitration of plaintiff's claims on an individual, non-class basis.  ECF 11. Mr. Skinner's suit is subject to arbitration, defendant argued, because BSD is an assignee of the rights originally held by Crest, and § 15 of the Agreement requires the arbitration of plaintiff's suit against Mr. Garry. ECF 11 at 8-11.  In addition, defendant maintained that his debt collection action against Mr. Skinner in State court did not constitute a waiver of his right to compel arbitration.  *Id.* at 11-12.

Mr. Skinner opposed arbitration on three grounds.  ECF 14 at 5-10.  First, plaintiff argued that Mr. Garry failed to demonstrate a chain of title for Mr. Skinner's debt between Crest and BSD and therefore Mr. Garry could not enforce the arbitration provision in the Agreement.  *Id.* at 5-6. Second, plaintiff posited that the Agreement's arbitration provision does not cover Mr. Garry because he is not an officer or shareholder of Crest, and § 15 does not address its assignability.  *Id.* at 6-8.  Third, Mr. Skinner argued that Mr. Garry waived his right to arbitrate by suing plaintiff in State Court.  *Id.* at 8-10; ECF 23.

As noted, by Memorandum Opinion and Order of August 18, 2020, I denied the motion to compel.  ECF 28; ECF 29.  But, I found that Mr. Garry did not waive his right to pursue arbitration. ECF 28 at 17. Further, I determined that the arbitration provision covers the suit.  *Id.*  In particular, I stated, *id.*: "Mr. Skinner's suit qualifies as a 'Claim' under the plain language of § 15(b)(ii) [of the Agreement] because it 'arises from . . . [his] Lease.'"  (Citation omitted).  I added, *id.*: "Specifically, plaintiff's suit concerns the 'collection of any amounts [that he] owe[s]' under the Agreement."  And, I concluded that defendant "is covered under the Agreement, pursuant to § 15(b)(i)."  *Id.*  However, I denied the motion to compel arbitration because Mr. Garry did not demonstrate an unbroken chain of assignment.  *Id.* at 19.  Therefore, he did not establish the right to enforce the arbitration provision.  *Id.*

This Motion followed. It includes exhibits that pertain to the chain of assignment. Additional facts are included, *infra*.

## II. Legal Standards

### A. The Federal Arbitration Act

Mr. Garry moves to compel arbitration and to stay this action pursuant to the Act, 9 U.S.C. § 1 *et seq.*

Enacted in 1925, the FAA "requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, ___ U.S. ___, 139 S. Ct. 1407, 1412 (2019); *see also Mey v. DIRECTV,* LLC, 971 F.3d 284, 288 (4th Cir. 2020); *McCormick v. Am. Online, Inc.*, 909 F.3d 677, 679 (4th Cir. 2018). "Arbitration is a matter of contract." *Mey*, 909 F.3d at 288. Indeed, the FAA "places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).

Under § 2 of the FAA, an arbitration contract is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Thus, the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, ___ U.S. ___, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also McCormick*, 909 F.3d at 680 ("[T]he FAA elevates the arbitration of claims as a favored alternative to litigation when the parties agree in writing to arbitration.").

Section 3 of the Act provides, 9 U.S.C. § 3:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement,

providing the applicant for the stay is not in default in proceeding with such arbitration.

Under 9 U.S.C. § 4, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." Further, § 4 provides that, when presented with such a petition, a court

> shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

Conversely, § 4 provides that if the "making of the arbitration agreement . . . be in issue," then "the court shall proceed summarily to the trial thereof."

"'Sections 3 and 4 [of the FAA] ... provide two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4.'" *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (quoting *Chorley Enters. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015) (brackets in *Galloway*).

In *Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002), the Fourth Circuit explained, *id.* at 500-01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)):

> In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."

*Accord Galloway*, 819 F.3d at 84.

The Fourth Circuit has said: "The FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such

arbitration.' This stay-of-litigation provision is mandatory." *Adkins*, 303 F.3d at 500 (quoting 9 U.S.C. § 3)). Thus, the district court "has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins*, 303 F.3d at 500. Accordingly, a court must "engage in a limited review to ensure that the dispute is arbitrable—*i.e.*, that a valid agreement exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Murray v. United Food and Commercial Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002).[2]

"Whether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Levin v. Alms and Assoc., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 92 (4th Cir. 1996) (citation omitted)) (alteration in *Levin*); *see Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 236 (4th Cir. 2019); *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 913 F.3d 409, 415 (4th Cir. 2019). And, "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 296 (2010); *see also Berkeley Cty. Sch. Dist.*, 944 F.3d at 234 (stating that § 4 of the FAA "requires that the district court—rather than the arbitrator—decide whether the parties have formed an agreement to arbitrate"); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 637 (4th Cir. 2002). However, the Supreme Court has said "that parties may agree to have an arbitrator

---

[2] In lieu of a stay, some courts have determined that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001); *see Willcock v. My Goodness! Games, Inc.*, PWG-16-4020, 2018 WL 3970474, at *4 (D. Md. Aug. 20, 2018); *Kabba v. Ctr.*, PWG-17-211, 2017 WL 1508829, at *2 (D. Md. Apr. 27, 2017) (same), *aff'd*, 730 F. App'x 141 (4th Cir. 2018). However, defendant seeks a stay, not dismissal. *See* ECF 33 at 1.

decide not only the merits of a particular dispute but also gateway questions of arbitrability." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, ___ U.S. ___, 139 S. Ct. 524, 529 (2019) (internal quotation marks omitted).

To determine if there is a valid agreement, courts in the Fourth Circuit "'apply ordinary state-law principles that govern the formation of contracts and the federal substantive law of arbitrability.'" *Minnieland Private Day Sch.*, 913 F.3d at 415 (citation omitted). Notably, "[a]ny uncertainty regarding the scope of arbitrable issues agreed to by the parties must be resolved in favor of arbitration." *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) (citations omitted); *see also Levin*, 634 F.3d at 266 ("The 'heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.'"); *Adkins*, 303 F.3d at 50.

In sum, the Fourth Circuit has stated, *Galloway*, 819 F.3d at 84 (cleaned up) (citations omitted):

> [A]pplication of the FAA requires demonstration of four elements: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

*See also Adkins*, 303 F.3d at 500-01; *Whiteside*, 940 F.2d at 102. And, these requirements apply to motions brought under § 3 of the Act as well those brought under § 4. *See Noe v. City Nat'l Bank of W. Virginia*, 828 F. App'x 163, 165 (4th Cir. 2020) (citing *Adkins*, 303 F.3d at 500-01).

### III. Discussion

Mr. Garry has renewed his motion to compel arbitration of plaintiff's claims on an individual, non-class basis. ECF 33. Mr. Garry asserts that his renewed motion "fills in the hole

in the chain of title by providing evidence of the transfer from Crest to DMP of plaintiff's debt, as well as further evidence of the transfer from DMP to Cherrywood." ECF 33 at 3.

As noted, upon consideration of the evidence submitted by Mr. Garry in his prior motion to compel arbitration, I concluded that he failed to establish an unbroken chain of assignment because the affidavits he submitted were not sufficient to authenticate all of the links in the chain of assignments from Crest to DMP, then DMP to Cherry, and Cherry to BSD. In particular, I determined that the affidavit of Mr. Geisler, Cherry's President, provided the necessary foundation for Cherry's records. ECF 28 at 22. Thus, I found that Mr. Geisler's statement authenticates the sale from DMP to Cherry and Cherry to BSD. *Id.* But, Mr. Garry did not provide a declaration or affidavit from someone who had personal knowledge of the business practices of Crest or DMP and who could confirm that Mr. Skinner's debt was, in fact, transferred from Crest to DMP.

In his opposition, plaintiff argues that Mr. Garry still has failed to demonstrate a chain of title for the transfer of debt because he has not supplied an affidavit of someone who has personal knowledge of the business practices of Crest who can attest to the transfer. ECF 36 at 3. Rather, plaintiff contends that the only affidavit that addresses the transfer from Crest (ECF 33-4) is insufficient to authenticate the documents on which defendant relies to prove a valid assignment. ECF 36 at 3-5.

Based on the affidavits Mr. Garry submitted with this Motion, I am satisfied that he has cured the deficiencies and demonstrated an unbroken chain of assignment from Crest to BSD. To demonstrate that Mr. Skinner's debt was properly assigned to BSD, defendant again relies primarily on a series of exhibits that trace the transfer of Mr. Skinner's debt from Crest to DMP, from DMP to Cherry, and from Cherry to BSD. *See* ECF 33-4 to ECF 33-8. These documents include the Rental Purchase Agreement between Mr. Skinner and Crest (ECF 33-5); a bill of sale

11

from Crest to DMP (ECF 33-4); a data file identifying all of the accounts transferred from Crest, including Mr. Skinner's account (ECF 33-7); a bill of sale from DMP to Cherry (ECF 33-6); and a bill of sale from Cherry to BSD (ECF 33-8).

These documents are hearsay; they were made outside of Court and are offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801. Therefore, they are inadmissible unless a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 802; *see Graves v. Lioi*, 930 F.3d 307, 326 n.15 (4th Cir. 2019) (observing that "'hearsay, like other evidence inadmissible at trial, is ordinarily an inadequate basis for summary judgment'") (citation omitted); *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) ("It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment."); *see e.g.*, *Whittaker v. Morgan State Univ.*, 524 F. App'x 58, 60 (4th Cir. 2013) (declining to consider an unauthenticated letter on summary judgment).

According to defendant, the Court may consider these documents under the exception for "Records of a Regularly Conducted Activity," commonly referred to as the "business records exception," set forth in Fed. R. Civ. Evid. 803(6). ECF 33 at 8. Rule 803(6) allows for the admission of a "record of an act, event, condition, opinion, or diagnosis" if

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Relevant here, pursuant to Subsection (D), the business records exception requires authentication of the document by the testimony or declaration of a "custodian or other qualified person." Fed. R. Evid. 902(11). Notably, "a 'qualified witness' need not have personally participated in the creation of the document, nor know who actually recorded the information." *Gen. Ins. Co. of Am. v. U.S. Fire Ins. Co.*, 886 F.3d 346, 357 (4th Cir. 2018) (quoting *United States v. Wein*, 521 F. App'x. 138, 140 (4th Cir. 2013)); *see Callahan v. Pac. Cycle, Inc.*, 756 F. App'x 216, 225 (4th Cir. 2018). But, the witness "must be able to testify that the record was 'kept in the course of a regularly conducted business activity and also that it was a regular practice of that business activity to make the record.'" *Gen. Ins. Co.*, 886 F.3d at 357 (quoting *United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014)). Thus, in order to authenticate a document, the witness "must be familiar with the creation and record keeping procedures of the organization in order to establish the records' trustworthiness." *United States v. Bacas*, 662 F. Supp. 2d 481, 487 (E.D. Va. 2009); *see, e.g.*, *United States v. Porter*, 821 F.2d 968, 977 (4th Cir. 1987) (concluding that security guard who merely had access to company files but did not know how the records were created or stored was not a "qualified witness").

Also of relevance, under the so-called "integrated business records exception," a document prepared by a third party may qualify as another entity's business record under Rule 803(6) if that entity integrated the third-party record into its records, relied upon it in its day-to-day operations, and the surrounding circumstances indicate trustworthiness.[3] *See, e.g., Brawner v. Allstate Indem. Co.*, 591 F.3d 984, 987 (8th Cir. 2010) ("Several other courts have held that a record created by a

---

[3] To my knowledge, the Fourth Circuit has not addressed this application of Rules 803(6) and 902(11).

13

third party and integrated into another entity's records is admissible as the record of the custodian entity, so long as the custodian entity relied upon the accuracy of the record and the other requirements of Rule 803(6) are satisfied.... We agree with these courts...."); *United States v. Adefehinti*, 510 F.3d 319, 326 (D.C. Cir. 2007) ("[A] record of which a firm takes custody is thereby 'made' by the firm within the meaning of the rule (and thus is admissible if all the other requirements are satisfied)."); *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1342–44 (Fed. Cir. 1999) ("Other courts of appeal have addressed this situation in a number of cases and have generally held that a document prepared by a third party is properly admitted as part of the business entity's records if the business integrated the document into its records and relied upon it."); *United States v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990) (holding that medical records from hospital were the business records of the insurance company and explicitly recognizing that "there is no requirement that the [business] records be created by the business having custody of them"); *Bey v. Midland Credit Management*, GJH-15-1329, 2016 WL 1226648 (D. Md. Mar. 26, 2016) (applying integration rule); *Pender v. Bank of Am. Corp.*, NO. 3:05-CV-00238-GCM, 2016 WL 7320894, at *5 (W.D.N.C. Dec. 15, 2016) (same); *Bank of N.Y. Mellon v. Adams*, No. 5:13-CV-245-BO, 2014 WL 3810631, at *1 (E.D.N.C. Aug. 1, 2014) (same); *United States v. Ging-Hwang Tsoa*, No. 1:13cr137 (JCC), 2013 WL 5837649, at *3-5 (E.D. Va. Oct. 29, 2013) (same).

The "business records exception is based on the indicia of reliability that attaches to a record created or maintained by an employer in the ordinary or regular course of their business." *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 588 (6th Cir. 2009); *see* 2 McCormick On Evidence § 286 (8th ed. 2020) ("The hearsay exception for regularly kept records is justified on grounds of trustworthiness . . . ."). Thus, the admission of integrated business records depends "on the particular facts of each case." *U.S. Bank Trust, N.A. as Trustee for LSF9 Master*

*Participation Trust v. Jones*, 925 F.3d 534, 540 (1st Cir. 2019).  To that end, courts have declined to apply the business records exception where the incorporated documents lack indicia of trustworthiness.  *See Webb v. Midland Credit Management , Inc.*, No. 11 C 5111, 2020 WL 2022013 (N.D. Ill. May 31, 2012); *Henggeler v. Brumbaugh & Quandahl, P.C., LLO*, 894 F. Supp. 2d 1180, 1187 (D. Neb. 2012) (declining to accept declarant was qualified to authenticate business records created by other entity).

For instance, in *Webb*, 2020 WL 2022013, the court declined to admit third-party documents based on the declaration of another business custodian where two of the documents were undated.  *Id.* at *3.  Likewise, in *Henggeler*, 894 F. Supp. 2d 1180, the court refused to accept third-party documents that Midland sought to authenticate because the bill of sale for one transfer was missing and the account statement was "extensively redacted."  *Id.* at 1187-88.

As noted, applying Rules 902(11) and 803(6), I previously found that Mr. Geisler's affidavit (ECF 19-2; ECF 33-2) provided the necessary foundation for Cherry's records and was thus sufficient to authenticate the bill of sale between DMP and Cherry and between Cherry and BSD. Applying those same rules, I now find that the affidavit of Mr. Asbrock (ECF 33-1; ECF 39-1), as well as the expanded data file of accounts transferred from Crest (ECF 33-7), are sufficient to authenticate the remaining assignment from Crest to DMP (ECF 33-4).

Mr. Asbrock attests that he is the Chief Operating Officer of DMP so he is "familiar with the business and record-keeping practices of DMP." ECF 33-1, ¶ 1. He posits that on June 29, 2017, DMP received an assignment of approximately 88,656 "charged off accounts receivable" from Crest. *Id.* ¶ 2. And, as part of that transaction, DMP received a bill of sale from Crest that DMP has kept "in the ordinary course of business and relies upon [] to establish good title to the accounts purchased from Crest." *Id.* Crest also provided DMP with a "sale file providing

15

information about each of the charged off accounts," including Mr. Skinner's account. *Id.* And, Mr. Asbrock avers that the "data transmitted in that sale file was also kept by DMP in the ordinary course of business"; "incorporated in the business records of DMP"; and "was relied upon by DMP in conducting its business." ECF 39-1, ¶ 2. This statement amply authenticates the assignment between Crest and DMP (ECF 33-4).

Plaintiff asserts that Mr. Asbrock is not qualified under Rule 803(6) because he is not the custodian of the documents maintained by Crest, nor is he familiar with the business practices of Crest. ECF 36 at 3. However, as noted, the "records [that] a business receives from others are admissible under Federal Rule of Evidence 803(6) when those records are kept in the regular course of business, relied upon by that business, and where that business has a substantial interest in the accuracy of the records." *MRT Construction Inc. v. Hardrives*, 158 F.3d 478, 483 (9th Cir. 1998) (citing *United States v. Childs*, 5 F.3d at 1333–34, 1334 n. 3 (9th Cir.1993)). Thus, it is immaterial that the document was not actually produced by Mr. Asbrock or that he is not the custodian of Crest's documents.

Last, Rule 803(6) applies only if "the opponent does not show that the source of information or the method of circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6); *see U.S. Bank Tr., N.A. for LSF9 Master Participation Tr. v. Jones*, 330 F. Supp. 3d 530, 543 (D. Me. 2018), *aff'd sub nom. U.S. Bank Tr., N.A. as Tr. for LSF9 Master Participation Tr. v. Jones*, 925 F.3d 534 (1st Cir. 2019). Mr. Skinner has not provided any basis to show that the integrated records are untrustworthy.

Moreover, the data file (ECF 33-7) that Mr. Garry submitted with his Motion bears additional indicia of reliability.[4] For instance, it now clearly shows that Crest was the original creditor for all of the accounts. And, it shows account information for all 307 of the debtor accounts that were purportedly transferred from Crest to DMP and DMP to Cherry. Moreover, plaintiff again provides no specific reason to doubt the trustworthiness or reliability of the record, other than the fact that it was adopted from another business.

Other courts have reached similar conclusions. *See, e.g., Cline v. Deutsche Bank Nat'l Trust Co.*, No. 3:14–CV–1565–D, 2015 WL 4041791, at *4 (N.D. Tex. July 2, 2015) (requirements of Rule 803(6) were satisfied where there was no showing of lack of trustworthiness and where testimony showed that loan records—including documents obtained from prior servicers—were integrated into SPS's records and relied upon by SPS); *Foregger v. Residential Credit Solutions, Inc.*, No. 12–11914–FDS, 2014 WL 1364788, at *5 (D. Mass. Apr. 4, 2014) (information in documents that came from prior servicers was integrated into the records of the company that bought a mortgage at a foreclosure sale; thus, where plaintiff made no showing that the records were unreliable or untrustworthy, documents attached to the affidavit of the buyer's vice president were admissible under Rule 803(6)); *Lyon Fin. Servs., Inc. v. Clear Sky MRI & Diagnostic Ctrs., Inc.*, No. 05–3084, 2006 WL 2338407, at *4 (E.D. Pa. Aug. 10, 2006) (unnecessary to identify person with firsthand knowledge of transaction documents; employee of servicer responsible for administering leases and loans was qualified under Rule 803(6)). Therefore, I am satisfied that Mr.

---

[4] Previously, there were "reasons to question the trustworthiness of the exhibits." ECF 28 at 25. In particular, I noted that the data file that accompanied the original motion (ECF 19-6) was undated and heavily redacted and did not contain any indicia of having been created by Crest. ECF 28 at 25. The evidence did not establish that it was a record of Mr. Skinner's Crest account.

Garry has established a chain of assignment that allows him to stand in the shoes of Crest and enforce the Agreement.

Because I have found that Mr. Garry can enforce the Agreement's arbitration provision against Mr. Skinner, I shall stay the suit. *See Aggaro v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 376 (4th Cir. 2012) (noting that the "'proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings pending arbitration,'" under Section 3 of the FAA, "'rather than to dismiss outright'") (citation omitted).

## IV. Conclusion

For the reasons set forth above, I shall grant the Motion (ECF 33) and stay the case.

An Order follows.

Date: June 7, 2021                                        /s/
                                                    Ellen L. Hollander
                                                    United States District Judge